UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARIA MOE,<br><br>        Plaintiff,<br><br>v.<br><br>DONALD TRUMP, in his official capacity as President of the United States; JAMES R. MCHENRY III, in his official capacity as Acting Attorney General of the United States; WILLIAM LOTHROP, in his official capacity as Acting Director of the Federal Bureau of Prisons;<br><br>        Defendants. | Civil Action No. 25-10195<br><br>**FILED UNDER SEAL** |

**PLAINTIFF'S REPLY TO DEFENDANTS' RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Jennifer L. Levi (Bar No. 562298)
Bennett H. Klein (Bar No. 550702)
Sarah Austin*
**GLBTQ LEGAL ADVOCATES**
**& DEFENDERS**
18 Tremont, Suite 950
Boston, MA 02108

Christopher F. Stoll *
Amy Whelan*
**NATIONAL CENTER FOR**
**LESBIAN RIGHTS**
870 Market Street, Suite 370
San Francisco, CA 94102

Alexander Shalom*
Natalie J. Kraner*
**LOWENSTEIN SANDLER LLP**
1251 Avenue of the Americas
New York, NY 10020

*Pro Bono Counsel for Plaintiffs*
*\* Pro Hac Vice Pending*

This case challenges the BOP's new policy, pursuant to Executive Order 14166, that requires all transgender women to be housed with men and terminates all medical treatments of gender dysphoria. Unable to defend these policies on their merits, Defendants argue that Ms. Moe must pursue her claims through habeas rather than civil rights litigation, that her claims are not ripe, and that this Court should defer to their decisions to transfer her to a men's facility. These arguments fail. Under settled law, a civil rights action is proper here. Defendants' own actions in beginning to implement the Order's mandates demonstrate both the ripeness of Ms. Moe's claims and the urgent need to prevent further irreparable harm. Finally, no deference is warranted here because the challenged policies strip prison officials of their discretion and replace individualized medical and housing assessments with blanket prohibitions that put Ms. Moe's health and safety at grave risk.

I.   **Habeas Is Not an Exclusive Remedy, So Transfer Is Not Required**

Defendants' habeas argument fails for three independent reasons.

First, the nature of this case makes injunctive relief appropriate. This case falls outside the scope of typical habeas claims. Unlike a case challenging the fact or duration of confinement or specific alleged misconduct by individual BOP officials, this is a facial constitutional and statutory challenge to an executive order and its categorical enforcement against an entire class. The Supreme Court has repeatedly held that for such broad policy challenges, injunctive relief is appropriate. *See, e.g.*, *Trump v. Int'l Refugee Assistance Project*, 582 U.S. 571, 583 (2017) (declining to stay preliminary injunctions prohibiting enforcement of an executive order as to a defined class of foreign nationals); *Ziglar v. Abbasi*, 582 U.S. 120, 144 (2017) (holding that injunctive relief is available to challenge "large-scale policy decisions" affecting incarcerated people, regardless of whether habeas is also available); *Corr. Servs. Corp. v. Malesko*, 534 U.S.

61, 74 (2001) ("Injunctive relief has long been recognized as the proper means for preventing [BOP] entities from acting unconstitutionally.").

Second, habeas is not an exclusive remedy, as Defendants' cited cases acknowledge. These cases merely state that incarcerated people "may" challenge the execution of their sentence through 28 U.S.C. § 2241. *Francis v. Maloney*, 798 F.3d 33, 36 (1st Cir. 2015).[1] The availability of habeas does not preclude other remedies.

Third, precedent in this district strongly supports using civil actions rather than habeas in cases seeking injunctive relief for medical deliberate indifference and unconstitutional placement conditions. *See Crooker v. Grondolsky*, No. 12-12024-RGS, 2012 U.S. Dist. LEXIS 156760, at *3 (D. Mass. Nov. 1, 2012) (holding that "a non-habeas civil action is the proper method of challenging . . . a claim based on inadequate medical care"); *Crooker v. Grondolsky*, No. 13-10329-GAO, 2013 U.S. Dist. LEXIS 36978, at *2, *7 (D. Mass. Mar. 15, 2013) (same); *Jenkins v. Spaulding*, Civ. No. 19-10078-MPK, 2019 U.S. Dist. LEXIS 45148, at *2-3 & n.1 (D. Mass. Feb. 22, 2019) (holding that a claim challenging the constitutionality of "conditions of confinement . . . should be brought through a civil rights action").

## II.   Ms. Moe Is Likely to Succeed on the Merits

### A. Ms. Moe's Claims Regarding Section 4(c) Are Ripe

Plaintiff's claims regarding Section 4(c) are ripe. Although the "BOP has not yet revised its policies concerning medical care," (Gov. Br. at 2), for transgender incarcerated people, it

---

[1] *See also Rogers v. United States*, 180 F.3d 349, 357 (1st Cir. 1999) (same); *Muniz v. Sabol*, 517 F.3d 29, 33-34 (1st Cir. 2008) (indicating that Section 2241 is the appropriate statutory vehicle for "a habeas petition seeking relief from the manner of execution of a sentence"); *JJS v. W.S. Pliler*, No. 19-CV-02020 (VSB)(SN), 2022 U.S. Dist. LEXIS 146318, at *51 (S.D.N.Y. Aug. 3, 2022) (stating that Section 2241 "authorizes" habeas relief), *report and recommendation adopted sub nom. Shelby v. Warden J. Petrucci*, No. 20-CV-3233 (VSB), 2022 U.S. Dist. LEXIS 199132 (S.D.N.Y. Nov. 1, 2022).

immediately began implementing the Executive Order, including initiating facility transfers and re-classifying sex designations. *See, e.g.*, Compl. ¶¶ 3–4. Section 4(c) calls on the BOP to revise "its policies concerning medical care" but it also contains a self-executing clause that demands that the BOP "ensure that no Federal funds are expended for any medical procedure, treatment, or drug for the purpose of conforming an inmate's appearance to that of the opposite sex." Exec. Order No. 14,166 § 4(c). The second requirement of Section 4(c) does not ask the BOP to make any policy changes; it simply requires the BOP to cut off all federal funding for certain medical care. Such an unequivocal directive from the President is sufficient to establish jurisdiction and justiciability, even if it is yet to be fully implemented. *Doe v. Trump*, 275 F. Supp. 3d 167, 176 (D.D.C. 2017), *vacated on other grounds sub nom. Doe 2 v. Shanahan*, 755 F. App'x 19 (D.C. Cir. 2019).

### B. *Turner v. Safley* Does Not Apply To Plaintiff's Equal Protection Claim

Defendants do not dispute that if heightened scrutiny applies, Plaintiff is likely to succeed on her equal protection claim. Instead, they erroneously argue that BOP's actions are subject only to the lower standard set forth in *Turner v. Safley*, 482 U.S. 78 (1987). In *Johnson v. California*, 543 U.S. 499 (2005), the Supreme Court squarely held that *Turner* does not apply when prison policies facially classify on a constitutionally suspect basis such as race. To the contrary, the Court held that: "In the prison context, when the government's power is at its apex, we think that searching judicial review of racial classifications is necessary to guard against invidious discrimination." *Id*. at 511.

While *Johnson* involved a prison policy that discriminated based on race, the same principle applies to prison policies that discriminate based on sex, like those challenged here. *See, e.g.*, *Pitts v. Thornburgh*, 866 F.2d 1450, 1455 (D.C. Cir. 1989) (holding that *Turner* does not

4

apply to prison policies that facially discriminate based on sex). As the D.C. Circuit explained in *Pitts*, "equal protection claims . . . differ in kind from challenges to limitations upon personal rights that *Turner* subjects to review to ensure that they are 'reasonably related to legitimate penological interests.'" *Id*. (quoting *Turner*, 482 U.S. at 89). "The claim charges invidiousness, rather than an unwarranted interference with constitutionally secured liberties." *Id*.

      The *Turner* standard does not control here for an additional fundamental reason. *Turner* addressed situations where prison officials needed flexibility in their daily decision-making to handle security issues and prison administration. The Court rejected strict scrutiny in that context because it would overly restrict officials' ability to make necessary judgment calls. 482 U.S. at 89. Ms. Moe's case presents the opposite scenario. She challenges an Executive Order that eliminates prison officials' discretion entirely, replacing their professional judgment with a blanket prohibition. Rather than protecting officials' ability to make case-by-case decisions, the Executive Order forces them to ignore their expertise and apply an inflexible ban in all situations.

      The defendants' two cited cases are fundamentally different than this one. Both cases predate *Johnson v. California*, and neither case involved policies that discriminated based on protected characteristics like race or sex. In *Jones v. North Carolina Prison Labor Union, Inc*., 433 U.S. 119 (1977), the Court examined a policy that restricted inmates from recruiting others to join a prison union. This was a First Amendment challenge where the Court recognized that some constitutional rights "are necessarily curtailed by confinement." *Id.* at 125. Similarly, *Washington v. Harper*, 494 U.S. 210 (1990) involved a policy allowing involuntary psychiatric medication under specific conditions. There too, the Court analyzed the right in question specifically "in the context of the inmate's confinement." *Id.* at 222.

5

The Supreme Court has since drawn a clear line: the deferential *Turner* test applies only to "rights that are 'inconsistent with proper incarceration.'" *Johnson*, 543 U.S. at 510 (quoting *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003). Protection from discrimination based on protected characteristics like race or sex is not such a right. As the Court explicitly stated: "The right not to be discriminated against based on one's race is not susceptible to the logic of *Turner*. It is not a right that need necessarily be compromised for the sake of proper prison administration." *Id.* This principle applies directly to Ms. Moe's case. Like racial discrimination, sex discrimination in prisons must face heightened scrutiny, not the more permissive *Turner* standard.

### C.  BOP's Implementation of the Order Establishes Deliberate Indifference

Ms. Moe has demonstrated a strong likelihood of success on her Eighth Amendment claims based on both the Executive Order's mandate that all transgender women, including Ms. Moe, must be housed with men regardless of their individual risk of being subjected to violence in a men's facility, and the Order's imposition of a blanket ban on medical treatment for gender dysphoria.

With respect to housing, Defendants assert that their plan to transfer Ms. Moe to a men's facility does not demonstrate deliberate indifference because only 16 of the 1,506 transgender women in BOP custody are currently housed in women's facilities. They argue that they have considered such factors as the risk of sexual assault at the male facilities identified as potential transfer locations. But Defendants ignore that BOP has consistently determined, based on all the relevant factors, that the safest and most appropriate location for her is in a women's facility. The fact that Ms. Moe is one of a very small number of transgender women in BOP custody to demonstrate that placement in women's housing is warranted only serves to underscore the risks that Ms. Moe would face if transferred to a men's prison. These risks include an extremely high

6

risk of physical and sexual assault—a risk she does not currently face in women's housing, but one to which Defendants now seek to purposefully subject her. They offer no evidence that any of the relevant factors have changed since BOP's last determination that she belongs in a women's facility. Indeed, they readily acknowledge that "BOP is aware that such placement can increase the risk of victimization." (Gov. Br., at 14.) They simply seek to subject her to those risks because the Order requires it. That is the definition of "deliberate indifference." *See, e.g., Calderon-Ortiz v. LaBoy-Alvarado*, 300 F.3d 60, 64 (1st Cir. 2002).

With respect to medical care, Defendants argue that the Order does not create a blanket treatment ban. Defendants' argument is at odds with the plain text of the Order. On its face, the Order prohibits all government-provided medical treatment for gender dysphoria, including medically necessary hormone therapy that Ms. Moe has received for years both before and since her confinement. It contains no exceptions and makes no allowance for individual consideration of medical necessity. Section 8(b)'s boilerplate language requiring implementation of the Order "consistent with applicable law" makes no reference to medical necessity, and Defendants offer no other proof that medically necessary care will be provided notwithstanding the clear language of the Order. Here, unlike in *Keohane v. Dixon*, 4:24-cv-00434, Docket No. 55 (N.D. Fla, Dec. 27, 2024), Defendants have offered no evidence that under the Order, they "will individually evaluate every inmate" to determine medical necessity or that the Order is anything other than the blanket ban it declares itself to be. Such a blanket ban on care for gender dysphoria is prohibited by the Eighth Amendment. *See, e.g., Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1267 (11th Cir. 2020); *Fields v. Smith*, 653 F.3d 550, 559 (7th Cir. 2011); *Soneeya v. Spencer*, 851 F. Supp. 2d 228, 249-50 (D. Mass. 2012).

### D. Ms. Moe's APA Claim Is Not Barred by 18 U.S.C. § 3625, and BOP's Actions Against Her Are Final

The Defendants' arguments that the APA claim is unlikely to succeed on the merits are also unavailing. First, they contend that the "APA does not apply to BOP decisions regarding inmate placement, *see* 18 U.S.C. § 3625," (Gov. Br. at 4), but this lawsuit is not challenging a discretionary agency decision about Ms. Moe's housing assignment. Rather, the APA claim arises from the implementation of an unconstitutional and unlawful Executive Order that requires the Attorney General to categorically bar all transgender women from ever being housed in women's prisons with no individualized consideration of their safety and security. *See* Exec. Order No. 14,166 § 4(a). The constitutionality of the Executive Order and the legality of its implementation lie at the heart of the APA claim and take it outside the narrow exception for housing assignments under 18 U.S.C. §§ 3621, 3625.

Second, Defendants argue that the "BOP has not taken any 'final agency action,' as would be required for Plaintiff to proceed under the APA." (Gov. Br. at 15 (citing 5 U.S.C. § 704).) Yet they concede that they took the following steps to transfer Ms. Moe to a men's prison:[2] they removed Ms. Moe from the general population and placed her in the SHU "in anticipation of a transfer to a men's facility"; they changed her gender classification from female to male on the BOP's website and in their records; and they identified two potential men's facilities for her transfer. (Gov. Br. at 6-7; Compl. ¶ 3.) These steps demonstrate that they have (1) consummated their "decisionmaking process" and have decided to transfer Ms. Moe to a men's facility, and (2) their action is one from which "'rights or obligations have been determined,' or from which 'legal

---

[2] The final decision to transfer Ms. Moe to ▇▇▇▇ or ▇▇▇▇ is not the agency action at issue here; it is the decision to place Ms. Moe in *any* men's prison. (*See* Gov. Br. at 6-7.)

8

consequences will flow.'" *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (quoting *Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 71 (1970)). Section 4(c) of the Executive Order also requires the Attorney General to "ensure that no Federal funds are expended for any medical procedure, treatment, or drug for the purpose of conforming an inmate's appearance to that of the opposite sex." This is a categorical ban on treatment for gender dysphoria that disregards the medical needs of all incarcerated individuals with this diagnosis. It is therefore likewise a BOP mandate that is not "merely tentative or interlocutory nature" and for which "rights or obligations have been determined"—rendering it a final agency action.[3] *Id.* (citations omitted). The only obstacle to the Government's implementation of these final agency actions is the TRO this Court entered.

In addition to being able to show a final agency action, Plaintiff has demonstrated her likelihood of success on the merits of her APA claim. The Executive Order directly contradicts the Prison Rape Elimination Act (PREA) and its implementing federal regulations. *See* 28 C.F.R. § 115.42(c) (requiring housing and programming assignments for transgender individuals to consider "on a case-by-case basis whether a placement would ensure the inmate's health and safety, and whether the placement would present management or security problems"). The Executive Order recognizes that 28 C.F.R. §§ 115.41–42 must be amended through notice-and-comment rulemaking for the Order's categorial bans to be implemented, and Section 4(a) directs the Attorney General to make such an "amendment." At minimum, the decision to forego the case-by-

---

[3] Defendants assert that since BOP has not yet "revise[d] its policies concerning medical care," any APA challenge on that particular action is premature. (Gov. Br. at 3.) If the BOP does in fact intend to revise its policies (and it is unclear that is the case given the unilateral steps already taken to implement the EO without revisions or notice and comment), then Defendants should have no objection to agreeing to maintain the status quo and to provide Ms. Moe access to her hormone therapy medications until new policies have been implemented.

case assessment currently required by 28 C.F.R. § 115.42(c) to comply with the Executive Order's mandate to house transgender women in male facilities "was made without observance of procedure required by law" in violation of the APA. For the reasons stated in Plaintiff's opening brief, she can also show that this agency action was unconstitutional and arbitrary and capricious.

### III. Ms. Moe Will Suffer Irreparable Harm in the Absence of Emergency Relief

As Ms. Moe previously demonstrated, the harms she will suffer from enforcement of the Order are both severe and irreparable. If transferred to a men's facility, Ms. Moe faces a very high risk of physical violence and sexual assault. If denied continuation of her medically necessary hormone therapy, her gender dysphoria will worsen, with severe negative consequences for her physical and mental health. Defendants make no real attempt to show that Ms. Moe does not face these serious harms. Instead, they fall back on their flawed arguments that the Order does not establish a blanket ban on medical care and that their knowing exposure of Ms. Moe to a risk of violence that she does not face in her current women's housing does not rise to the level of "deliberate indifference." Those arguments fail for the reasons discussed above. The severe threats that enforcement of the Order would pose to Ms. Moe's physical and mental health and safety are more than sufficient to demonstrate irreparable harm warranting preliminary relief.

### IV. The Balance of Harms and Public Interest Weigh Heavily in Favor of Emergency Relief

Defendants do not attempt to show that they or the public would suffer any meaningful harm if the Court grants Ms. Moe interim relief from enforcement of the Order. Instead, they ask the Court to defer to the judgment of the Executive Branch. No deference is warranted, however, when government policy violates fundamental constitutional liberties. It is "always in the public interest to prevent the violation of a party's constitutional rights." *Dorce v. Wolf*, 506 F. Supp. 3d 142, 145 (D. Mass. 2020) (internal citations omitted). The severe and documented harms to health

and safety that Ms. Moe faces far outweigh Defendants' blithe appeal to deference. Ms. Moe is entitled to emergency relief to preserve the status quo and to enable the Court's careful consideration of her claims.

                                                  Respectfully submitted,

/s/ *Jennifer Levi*
Jennifer L. Levi (Bar No. 562298)
Bennett H. Klein (Bar No. 550702)
Sarah Austin (pro hac vice pending)
GLBTQ LEGAL ADVOCATES & DEFENDERS
18 Tremont Street, Suite 950
Boston, MA 02108
(617) 426-1350
jlevi@glad.org
bklein@glad.org
saustin@glad.org

Christopher F. Stoll (pro hac vice pending)
Amy Whelan, Esq. (pro hac vice pending)
NATIONAL CENTER FOR LESBIAN RIGHTS
870 Market Street, Suite 370
San Francisco, CA 94102
(415) 365-1320
cstoll@nclrights.org
awhelan@nclrights.org

Alexander Shalom (pro hac vice pending)
Natalie Kraner (pro hac vice pending)
LOWENSTEIN SANDLER LLP
1251 Avenue of the Americas
New York, NY 10020
(862) 926-2029
(973) 422-6722
ashalom@lowenstein.com
nkraner@lowenstein.com

Dated: January 29, 2025