# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| MARIA MOE,<br><br>        Plaintiff,<br><br>    v.<br><br>DONALD TRUMP, in his official capacity as President of the United States, *et al.*,<br><br>        Defendants. | Civil Docket No. 1:25-cv-10195<br><br>**FILED UNDER SEAL** |

## DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................... 1

BACKGROUND ..................................................................................................... 4

A.    BOP's Inmate Designation Authority and Process ................................. 4

B.    The Executive Order and BOP's Implementation ................................... 6

C.    Procedural History ................................................................................... 7

LEGAL STANDARD ............................................................................................. 8

ARGUMENT ......................................................................................................... 8

I.    THIS SUIT CAN ONLY BE MAINTAINED IN THE DISTRICT OF
      ███████████ .............................................................................................. 8

II.   PLAINTIFF HAS NOT DEMONSTRATED A LIKELIHOOD OF
      SUCCESS ON THE MERITS ..................................................................... 10

      A.    Plaintiff Is Unlikely to Succeed on the Equal Protection
            Claim ............................................................................................... 10

      B.    Plaintiff Is Unlikely to Succeed on the Eighth
            Amendment Claim ........................................................................... 12

      C.    Plaintiff Is Unlikely to Succeed on the APA Claim ................... 15

III.  PLAINTIFF HAS NOT DEMONSTRATED IRREPARABLE HARM ............. 17

IV.   THE BALANCE OF EQUITIES AND PUBLIC INTEREST FAVOR
      DEFENDANTS ........................................................................................... 18

V.    RELIEF AGAINST THE PRESIDENT IS IMPROPER ..................................... 19

CONCLUSION ....................................................................................................... 19

## TABLE OF AUTHORITIES

**Cases**

*Abbott Labs. v. Gardner,*
  387 U.S. 136 (1967) ..................................................................................... 2

*Bennett v. Spear,*
  520 U.S. 154 (1997) ................................................................................... 14

*Braden v. 30th Judicial Circuit Court of Ky.,*
  410 U.S. 484 (1973) ..................................................................................... 9

*Charlesbank Equity Fund II v. Blinds To Go, Inc.,*
  370 F.3d 151 (1st Cir. 2004) ..................................................................... 17

*Does 1–6 v. Mills,*
  16 F.4th 20 (1st Cir. 2021) ......................................................................... 8

*Encino Motorcars, LLC v. Navarro,*
  579 U.S. 211 (2016) ................................................................................... 16

*Estelle v. Gamble,*
  429 U.S. 97 (1976) ..................................................................................... 12

*FCC v. Fox Television Stations, Inc.,*
  556 U.S. 502 (2009) ................................................................................... 16

*Francis v. Maloney,*
  798 F.3d 33 (1st Cir. 2015) ......................................................................... 8

*Freeman v. Texas Dep't of Crim. Just.,*
  369 F.3d 854 (5th Cir. 2004) ..................................................................... 10

*Jones v. North Carolina Prisoners' Union,*
  433 U.S. 119 (1977) ................................................................................... 10

*Keohane v. Fla. Dep't of Corr. Sec'y,*
  952 F.3d 1257 (11th Cir. 2020) .............................................................. 3, 4

*Kosilek v. Spencer,*
  774 F.3d 63 (1st Cir. 2014) .................................................... 3, 12, 13, 14

*Kuperman v. Wrenn,*
  645 F.3d 69 (1st Cir. 2011) ................................................................ 11, 17

*Lamb v. Norwood,*
   899 F.3d 1159 (10th Cir. 2018) ........................................................................... 3

*Matos ex rel. Matos v. Clinton School Dist.,*
   367 F.3d 68 (1st Cir. 2004) ................................................................................ 16

*Muniz v. Sabol,*
   517 F.3d 29 (1st Cir. 2008) .................................................................................. 8

*Narragansett Indian Tribe v. Guilbert,*
   934 F.2d 4 (1st Cir. 1991) .................................................................................. 17

*Nat'l Ass'n of Home Builders v. EPA,*
   682 F.3d 1032 (D.C. Cir. 2012) .......................................................................... 16

*Overton v. Bazzetta,*
   539 U.S. 126 (2003) ........................................................................................... 11

*Peoples Fed. Sav. Bank v. People's United Bank,*
   672 F.3d 1 (1st Cir. 2012) .................................................................................... 7

*Pers. Adm'r of Mass. v. Feeney,*
   442 U.S. 256 (1979) ............................................................................................. 9

*Robertson v. Hazlewood,*
   628 F. Supp. 3d 381 (D.N.H. 2022) ................................................................... 1, 8

*Rogers v. United States,*
   180 F.3d 349 (1st Cir.1999) ................................................................................. 8

*Rumsfeld v. Padilla,*
   542 U.S. 426 (2004) .......................................................................................... 1, 9

*Shelby v. Petrucci,*
   No. 19-CV-2020 (VSB), 2022 WL 16575766 (S.D.N.Y. Nov. 1, 2022) ................... 1, 8

*Street v. Maloney,*
   991 F.2d 786 (1st Cir. 1993) .............................................................................. 10

*Turner v. Safley,*
   482 U.S. 78 (1987) ....................................................................................... 10, 17

*Veney v. Wyche,*
   293 F.3d 726 (4th Cir. 2002) ............................................................................. 10

*Vill. Of Arlington Heights v. Metro. Hous. Dev. Cop.,*
   429 U.S. 252 (1977) ............................................................................................. 9

*Washington v. Harper*,
    494 U.S. 210 (1990) ........................................................................... 10

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ............................................................................... 7

**Statutes**

5 U.S.C. § 704 ...................................................................................... 14

5 U.S.C. § 706(2)(B) .............................................................................. 15

18 U.S.C. § 3621(b) ............................................................................ 4, 5

28 U.S.C. § 2241 ............................................................................... 1, 8

28 U.S.C. § 2241(a) ............................................................................... 9

Exec. Order,
    2025 WL 224165 (Jan. 20, 2025) ............................................... 1, 6, 18

**Regulations**

28 C.F.R. § 115.41 ............................................................................... 15

## INTRODUCTION

Plaintiff Maria Moe,[1] an inmate housed in the Federal Correctional Institution in ███████████ moved for a temporary restraining order and preliminary injunction to prevent the Federal Bureau of Prisons ("BOP") from transferring Moe to a men's facility and from stopping Moe's hormone treatment for gender dysphoria. An Executive Order issued by the President on the day he took office requires BOP to ensure that biological males are not housed in women's prisons. Exec. Order, 2025 WL 224165 (Jan. 20, 2025).

This Court should dismiss this case or at least transfer it to the District of ██████. The gravamen of the complaint sounds in habeas corpus and the inmate's conditions of confinement. The proper vehicle for such challenges is 28 U.S.C. § 2241, which requires that the suit be filed in the district of confinement. *See, e.g.*, *Shelby v. Petrucci*, No. 19-CV-2020 (VSB), 2022 WL 16575766, at *1 (S.D.N.Y. Nov. 1, 2022) (order granting § 2241 petition to transfer a biological male to a women's facility); *cf. Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004) (for challenges to "present physical confinement, jurisdiction lies in only one district: the district of confinement"); *Robertson v. Hazlewood*, 628 F. Supp. 3d 381, 384 (D.N.H. 2022) (adjudicating an Eight Amendment deliberate indifference conditions-of-confinement claim brought under § 2241).

---

[1] The Court has granted Plaintiff's motion to proceed in her pseudonym, Maria Moe.

Not only is this suit filed in the wrong district, but the requested relief to enjoin BOP from stopping Plaintiff's hormone treatment is premature. The ripeness doctrine seeks "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967) (courts should not "entangl[e] themselves in abstract disagreements" by engaging in "premature adjudication"). The Executive Order provides in Section 4(c) that "[t]he Attorney General shall ensure that the Bureau of Prisons revises its policies concerning medical care to be consistent with this order, and shall ensure that no Federal funds are expended for any medical procedure, treatment, or drug for the purpose of conforming an inmate's appearance to that of the opposite sex." BOP has not yet revised its policies concerning medical care for inmates who identify as transgender, so there has been no determination that the hormone treatment Plaintiff currently receives would be stopped. Until BOP has revised its policies and determined the appropriate treatment for Plaintiff's gender dysphoria, the Court would merely be offering an advisory opinion. Indeed, given the Executive Order's explicit requirement that the Order "be implemented consistent with applicable law," which would include the Constitution, any suggestion that BOP would act in a contrary manner is unwarranted and insufficient to support emergency relief. *Cf. Keohane v. Dixon*, 4:24-cv-00434, Docket No. 55 (N.D. Fla, Dec. 27, 2024) (a copy is attached) (suit challenging state correctional department's reevaluation of policies concerning hormone treatment for biological males where new state law prohibits "expending any state funds to purchase cross-sex hormones for the

2

treatment of Gender Dysphoria"; PI motion denied because the correctional department indicated that it would provide "constitutionally adequate care").

In any event, Plaintiff is unlikely to succeed on the merits on any of the claims. As for Plaintiff's Equal Protection claim, the Executive Order is not subject to heightened scrutiny because, in the prison context, differential treatment is permissible if it is "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). Under that deferential standard, the asserted interest in protecting the privacy of biological female inmates withstand scrutiny.

As for Plaintiff's claim that BOP necessarily will violate Plaintiff's Eighth Amendment rights by transferring Plaintiff to a male facility, the argument is likewise unlikely to succeed. As explained in the attached declaration of Mr. Rick Stover, BOP's Senior Deputy Assistant Director of the Designation and Sentence Computation Center, BOP has identified two facilities for Plaintiff's possible placement after considering various factors. Each facility is ███████████████ ███████████████████ and BOP determined that given the nature and characteristic of those facilities, any such placement would minimize the likelihood that Plaintiff would be victimized. BOP has not acted with deliberate indifference to the risk of assault against Plaintiff.

Nor can the prospect of placement in a male facility necessarily constitute "cruel and unusual" punishment. The vast majority of the male-to-female transgender inmates (1,490 out of a total of 1,506) are housed in men's facilities. "[The Eighth Amendment] does not impose upon prison administrators a duty to

3

provide care that is ideal, or of the prisoner's choosing." *Kosilek v. Spencer*, 774 F.3d 63, 82 (1st Cir. 2014) (en banc); *see also Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1266 (11th Cir. 2020) ("[T]he Constitution doesn't require that the medical care provided to prisoners be 'perfect, the best obtainable, or even very good.'"); *Lamb v. Norwood*, 899 F.3d 1159, 1162 (10th Cir. 2018) ("We have consistently held that prison officials do not act with deliberate indifference when they provide medical treatment even if it is subpar or different from what the inmate wants."). Because "medical treatment violates the Eighth Amendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness," *Keohane*, 952 F.3d at 1266, "[a] prisoner bringing a deliberate-indifference claim has a steep hill to climb," *id.* Plaintiff has not met the high burden of establishing an entitlement to the extraordinary remedy of a TRO or preliminary injunction.

Finally, Plaintiff's claim under the Administrative Procedure Act ("APA") is unlikely to succeed for at least two threshold reasons—(i) the APA does not apply to BOP decisions regarding inmate placement, *see* 18 U.S.C. § 3625, and (ii) BOP has not taken any "final agency action"—a prerequisite to judicial review under the APA, *see* 5 U.S.C. § 704.

## BACKGROUND

### A.    BOP's Inmate Designation Authority and Process

Decisions regarding classification and designation of inmates to a particular prison facility are vested in BOP. *See* 18 U.S.C. § 3621(b). In making inmate

designation decisions, BOP "may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau . . . that the Bureau determines to be appropriate and suitable." *Id.*

There are currently approximately 2,230 transgender inmates housed in BOP facilities and halfway houses. Stover Decl. ¶ 6. Of those, 1,506 are male-to-female transgender inmates, and 724 are female-to-male transgender inmates. *Id.* Of the 1,506 male-to-female transgender inmates, 16 are housed in female institutions. *Id.*

BOP's current Transgender Offender Manual, found in Program Statement 5200.04, has provided guidance on many aspects of managing transgender inmates, including staff training, initial designations, intake screening, and housing and programming assignments. This guidance has been revised at various times over the past several years. From May 2018 to January 2022, the guidance provided that in deciding the facility assignment for a transgender inmate, BOP would "use biological sex as the initial determination for designation." *See* 2018 Guidance § 5 (attached). The guidance further provided that "designation to a facility of the inmate's identified gender would be appropriate only in rare cases after consideration of all of the [identified] factors." *Id.*

In January 2022, BOP revised the Transgender Offender Manual to state that in deciding the facility assignment for a transgender inmate, BOP would consider, among other things, the inmate's "current gender expression." *See* 2022 Guidance § 5 (attached). That policy has remained in effect since 2022. Pursuant to the President's recent Executive Order, however, BOP will soon be revising the Manual.

Under both the current and prior versions of the Transgender Offender Manual, the Transgender Executive Council ("TEC"), a multidisciplinary team, is the BOP decisionmaking body on issues affecting the transgender population, including the assessment of facility designation for transgender inmates. It meets periodically to offer advice and guidance on unique measures related to treatment and management needs of transgender inmates and/or inmates with gender dysphoria.

## B.    The Executive Order and BOP's Implementation

On January 20, 2025, the President issued an Executive Order titled, "Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government" (the "Order"). As relevant here, Section 4(a) of the Order, titled "Privacy in Intimate Spaces," provides:

> The Attorney General and Secretary of Homeland Security shall ensure that males are not detained in women's prisons or housed in women's detention centers, including through amendment, as necessary, of Part 115.41 of title 28, Code of Federal Regulations and interpretation guidance regarding the Americans with Disabilities Act.

Section 4(c) of the Order provides:

> The Attorney General shall ensure that the Bureau of Prisons revises its policies concerning medical care to be consistent with this order, and shall ensure that no Federal funds are expended for any medical procedure, treatment, or drug for the purpose of conforming an inmate's appearance to that of the opposite sex.

The Order further requires that "it shall be implemented consistent with applicable law and subject to the availability of appropriations." Exec. Order § 8(b).

On January 21, 2025, BOP officials removed Plaintiff from the general population and placed Plaintiff in the Special Housing Unit ("SHU"), in anticipation

of transfer to a men's facility.[2]  On January 24, 2025, the TEC convened and found that the institutions most appropriate for Plaintiff were ███████████████ ████████████████████████████████████████████████████ ████████████████. Stover Decl. ¶ 9.  In determining the most appropriate placement, the TEC took into account ██████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████████████ *Id.* ¶ 10. ████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████ *Id.* ¶ 11.

## C.    Procedural History

Plaintiff filed this complaint on January 26, 2025, raising claims under (i) the Equal Protection Clause of the Fifth Amendment, (ii) the Eighth Amendment, (iii) the Rehabilitation Act, and (iv) the Administrative Procedure Act ("APA").  Plaintiff simultaneously moved for an *ex parte* temporary restraining order ("TRO") and a preliminary injunction, relying on the Equal Protection, Eighth Amendment, and APA claims.  The Court granted a TRO the same day to maintain the status quo until the matter can be heard.

---

[2] Plaintiff was later returned from the SHU to the general population on January 28, 2025.  Stover Decl., ¶ 8.

## LEGAL STANDARD

A temporary restraining order is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). To obtain such extraordinary relief, a plaintiff "must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that the injunction is in the public interest." *Peoples Fed. Sav. Bank v. People's United Bank*, 672 F.3d 1, 9 (1st Cir. 2012) (citation omitted). Where, as here, the defendants are government entities or official sued in their official capacities, the balance of equities and the public interest factors merge. *Does 1–6 v. Mills*, 16 F.4th 20, 37 (1st Cir. 2021).

## ARGUMENT

**I.    THIS SUIT CAN ONLY BE MAINTAINED IN THE DISTRICT OF ▮▮▮▮▮**

This suit is improperly filed in this judicial district. The complaint alleges that venue is proper in this judicial district under 28 U.S.C § 1391(e)(1) because Plaintiff is domiciled in Massachusetts. Compl. ¶ 11. Section 1391(e)(1) is applicable for suits against an officer or employee of United States "except as otherwise provided by law." 28 U.S.C § 1391(e)(1). Here, 28 U.S.C. § 2241 determines the appropriate judicial district for Plaintiff's claims because those claims sound in habeas corpus and conditions of confinement. The suit challenges the Plaintiff's physical custody in a men's facility and BOP's future determination about whether Plaintiff should continue to receive hormone treatment under the yet-to-be-formulated policies about

medical care for individuals suffering from gender dysphoria. Such claims must be pursued under 28 U.S.C. § 2241. The First Circuit has held that § 2241 is the proper vehicle for an inmate "to contest [his or her] imprisonment in a specific facility." *Francis v. Maloney*, 798 F.3d 33, 36 (1st Cir. 2015); *Muniz v. Sabol*, 517 F.3d 29, 33–34 (1st Cir. 2008) (§ 2241 appropriate vehicle for challenging delay in transfer to community corrections centers); *Rogers v. United States,* 180 F.3d 349, 357 (1st Cir.1999) (§ 2241 appropriate vehicle for challenging failure to designate state prison as place for confinement); *see also e.g., Shelby*, No. 19-CV-2020 (VSB), 2022 WL 16575766, at *1 (order granting § 2241 petition to transfer a biological male inmate to a women's facility). The same is true for condition of confinement claims. *See, e.g.*, *Robertson v. Hazlewood*, 628 F. Supp. 3d 381, 384 (D.N.H. 2022) (adjudicating an Eight Amendment deliberate indifference conditions-of-confinement claim brought under § 2241).

In a prisoner's suit brought under § 2241, the only appropriate district is the district of confinement. *See Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004) ("habeas petitions challenging present physical confinement, jurisdiction lies only in one district: the district of confinement"). Specifically, § 2241 limits district courts' grant of habeas relief only "within their respective jurisdictions.'" *Id.* (quoting 28 U.S.C. § 2241(a)). The Supreme Court has interpreted that language to require that "the court issuing the writ have jurisdiction over the custodian.'" *Id.* (quoting *Braden v. 30th Judicial Circuit Court of Ky.*, 410 U.S. 484, 495 (1973)). Here, the custodian is the warden of the facility where Plaintiff is imprisoned. The suit therefore should

have been filed in the District of ████. The Court should therefore dismiss the case or at a minimum, transfer the case to the District of ████.

## II.   PLAINTIFF HAS NOT DEMONSTRATED A LIKELIHOOD OF SUCCESS ON THE MERITS

### A.   Plaintiff Is Unlikely to Succeed on the Equal Protection Claim

Plaintiff's first claim is that Sections 4(a) and 4(c) of the Executive Order violate the Equal Protection Clause of the Fifth Amendment. *See* Pl.'s Mem. at 6–12. To succeed on such a claim, Plaintiff must show that the government acted with "discriminatory intent or purpose." *Vill. Of Arlington Heights v. Metro. Hous. Dev. Cop.*, 429 U.S. 252, 265 (1977). To show discriminatory purpose, a plaintiff must show that the government "selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 272 (1979).

While Plaintiff contends that the Order is subject to "heightened scrutiny," in the prison context, courts typically analyze alleged discriminatory prison practices under the standard set forth in *Turner v. Safley*, 482 U.S. 78, 89 (1987). Under the *Turner* test, differential treatment is permissible if it is "reasonably related to legitimate penological interests." *Id.* at 89. The Supreme Court has held that this standard is "necessary if 'prison administrators, and not the courts, are to make the difficult judgments concerning institutional operations.'" (alterations omitted) (quoting *Jones v. North Carolina Prisoners' Union*, 433 U.S. 119, 128 (1977)). And courts generally apply the *Turner* test even where the allegedly infringed

constitutional right would otherwise warrant heightened scrutiny.  *See Washington v. Harper*, 494 U.S. 210, 224 (1990).

The *Turner* test is akin to rational-basis review.  As the First Circuit has held, "[p]rison administrators confronted with an equal protection claim 'need only demonstrate a rational basis for their distinctions between organizational groups.'" *Street v. Maloney*, 991 F.2d 786, at *4 (1st Cir. 1993) (unpublished opinion) (quoting *Jones*, 433 U.S. at 134).  "Thus, so long as the prison officials' response is shown to be rationally supported, an equal protection claim must fail."  *Id.*; *see also, e.g.*, *Freeman v. Texas Dep't of Crim. Just.*, 369 F.3d 854, 860 (5th Cir. 2004) ("Prison regulations that impinge on fundamental constitutional rights are reviewed under the deferential standard set forth in *Turner* . . . .");  *Veney v. Wyche*, 293 F.3d 726, 732 (4th Cir. 2002) ("In a prison context, . . . we must determine whether the disparate treatment is reasonably related to any legitimate penological interests." (cleaned up)).  In addition, courts "must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them."  *Kuperman v. Wrenn*, 645 F.3d 69, 74 (1st Cir. 2011) (quoting *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003)).

Applying those principles here, Plaintiff is unlikely to succeed in showing that Sections 4(a) and 4(c) violate the Equal Protection Clause.  As to Section 4(a) ("Privacy in Intimate Spaces"), there is a legitimate penological interest in protecting the privacy of biological female inmates, and BOP's implementation of Section 4(a) has a

rational connection to furthering that interest.  BOP, like other federal agencies, is subject to Presidential executive orders and should act accordingly to the extent consistent with the Constitution.  Plaintiff notes that Section 4(a) conflicts with prior BOP policy of "individualized housing placement assessments for incarcerated transgender people," citing the 2022 version of BOP's Transgender Offender Manual. Pl.'s Mem. at 9.  But, as noted, the 2022 version of the manual itself reflected a change from the 2018 version, and BOP will soon be revising the Manual to implement the Executive Order.

As for Section 4(c), it does not require a "categorical ban" on medical care for transgender inmates, as Plaintiff contends.  Rather, Section 4(c) requires BOP to "revise[] its policies concerning medical care to be consistent with this order" and provides that "no Federal Funds are expended for any medical procedures, treatment, or drug for the purpose of conforming an inmate's appearance to that of the opposite sex."  The Executive Order does not discuss gender dysphoria, and BOP has not yet revised its policies to implement the Executive Order, nor has BOP determined that Plaintiff's hormone treatment must be stopped.  It is thus premature to consider whether the implementation of Section 4(c) is reasonably related to legitimate penological interests.

### B.    Plaintiff Is Unlikely to Succeed on the Eighth Amendment Claim

Plaintiff is also unlikely to succeed on the Eighth Amendment claim.  The Eighth Amendment's prohibition against "cruel and unusual punishments" is "meant to prohibit 'unnecessary and wanton infliction of pain,' which is 'repugnant to the

conscience of mankind.'" *Kosilek v. Spencer*, 774 F.3d 63, 82 (1st Cir. 2014) (en banc) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)); *see also id.* at 96 (Eighth Amendment "proscribes only medical care so unconscionable as to fall below society's minimum standards of decency"). To prove an Eighth Amendment violation due to inadequate medical care, "a prisoner must satisfy both: (1) an objective prong that requires proof of a serious medical need, and (2) a subjective prong that mandates a showing of prison administrators' deliberate indifference to that need." *Kosilek*, 774 F.3d at 82.

Plaintiff contends that BOP has acted with deliberate indifference in two ways: (1) by adopting a "blanket ban on gender dysphoria treatment" and (2) by "failing to protect [Plaintiff] from a serious risk of bodily harm" because Plaintiff will be transferred to a men's facility. Pl.'s Mem. at 13–14. Neither argument justifies the issuance of emergency relief.

First, as noted, the Executive Order does not require a "blanket ban" on treatment for gender dysphoria. As noted above, Section 4(c) of the Executive Order requires BOP to revise its policies concerning medical care for transgender inmates, but BOP has not yet done so. Moreover, Section 4(c) does not speak to housing issues or what medical treatment is constitutionally required to treat Plaintiff's gender dysphoria. Importantly, Section 8(b) of the Executive Order also requires that its provisions "be implemented consistent with applicable law," which would include any constitutional requirements. Thus, the Court can reasonably assume that BOP's

policies will ensure that Plaintiff is provided with constitutionally adequate medical care consistent with Eighth Amendment standards.

Second, Plaintiff likewise has not shown that BOP has acted with deliberate indifference in reassigning Plaintiff to a male facility. "For purposes of this subjective prong, deliberate indifference defines a narrow band of conduct, and requires evidence that the failure in treatment was purposeful." *Kosilek*, 774 F.3d at 83 (citations and quotations omitted). While "wanton disregard" to a prisoner's needs may suffice for deliberate indifference, such disregard "must be akin to criminal recklessness, requiring consciousness of impending harm, easily preventable." *Id.*

Here, BOP has considered Plaintiff's ███████████████████████ in making the housing determination, as well as the potential risk of sexual assault and the characteristics of the male facilities to which Plaintiff may be transferred. Stover Decl. ¶ 10. Given that the vast majority of transgender inmates are housed in a facility corresponding to their sex assigned at birth—indeed, of the 1,506 male-to-female transgender inmates, only 16 are housed in women's facility—the transfer decision by itself does not demonstrate deliberate indifference. Rather, it has always been the practical reality—under both the current and prior versions of the Transgender Offender Manual—that almost all male-to-female transgender inmates will be housed in male facilities. While BOP is aware that such placement can increase the risk of victimization, it did not "wanton[ly] disregard" that risk in deciding to transfer Plaintiff. *Kosilek*, 774 F.3d at 83. To the contrary, BOP specifically considered that risk and determined that it could be minimized by placing

Plaintiff in ███████████████████████████████████. Stover Decl. ¶ 11.

BOP did so even though ████████████████████████████████████████

██████████████████████. *Id.* ¶ 9.

### C.     Plaintiff Is Unlikely to Succeed on the APA Claim

Plaintiff likewise has not demonstrated a likelihood of success on the APA claim.  As a threshold matter, the APA "do[es] not apply to the making of any determination, decision, or order under [Title 18, Part II, Chapter 229, Subchapter C]."  18 U.S.C. § 3625.  Subchapter C includes 18 U.S.C. § 3621(b), which governs the "place of imprisonment."  Accordingly, Plaintiff cannot challenge through the APA BOP's decision as to Plaintiff's place of imprisonment.

BOP has not taken any "final agency action," as would be required for Plaintiff to proceed under the APA.  *See* 5 U.S.C. § 704.  Plaintiff acknowledges that "Executive orders issued by the President are not subject to the APA," but suggests that "an agency's action implementing such an order may be the basis of an APA claim."  Pl.'s Mem. at 16.  But for there to be "final" agency action, two considerations must be met.  "First, the action must mark the 'consummation' of the agency's decision-making process—it must not be of a merely tentative or interlocutory nature."  *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (internal quotation marks and citation omitted).  "[S]econd, the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'"  *Id.* (citations omitted).

Neither requirement is satisfied here.  As noted, BOP has not yet "revise[d] its policies concerning medical care," and so any challenge to the application of those yet-to-be-issued policies to Plaintiff is premature.  Nor has BOP made any "final" decision

as to which facility to transfer Plaintiff.  BOP has merely identified two facilities that it determined would be appropriate.

Moreover, even assuming the existence of a requisite final agency action, Plaintiff's APA claim is unlikely to succeed on the merits.  Plaintiff first contends that BOP's transfer decision was made "without observance of procedure required by law" because BOP "did not amend 28 C.F.R. §§ 115.41–42 through notice-and-comment rulemaking before deciding to transfer."  Plaintiff.  Pl.'s Mem. at 17.  But the cited regulations do not categorially preclude Plaintiff's placement in a men's facility; they merely require BOP to take into account Plaintiff's identification as a transgender inmate.  Moreover, the Executive Order provides only that the Attorney General "shall ensure that males are not detained in women's prisons or housed in women's detention centers, including through amendment, as necessary, of Part 115.41 of title 28," but does not dictate that any such amendment to the regulation must precede a decision to transfer.

Plaintiff further contends that BOP's actions violate the APA because they are "unconstitutional and thus also violate 5 U.S.C. § 706(2)(B)."  But for the reasons already stated, Plaintiff are not likely to show that BOP's actions are unconstitutional.  And again, Plaintiff ignores that the Executive Order itself requires that any implementation of its provisions be consistent with the Constitution.

Finally, Plaintiff contends that BOP's action is arbitrary and capricious because it "fails to consider important aspects of the problem," "depart[s] from agency

precedent without explanation," and "relies on pretextual or contrived reasons." *See* Pl.'s Mem. at 17.  Plaintiff may disagree with the Administration's policy decision on this issue.  But "[a]gencies are free to change their existing policies as long as they provide a reasoned explanation for the change." *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221–22 (2016).  As noted, BOP has in fact changed these policies before, in 2018 and 2022 and will do so again soon.  The Supreme Court has made clear that agency action is not subject to a heightened or more searching standard of review simply because it represents a change in policy.  *See FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 514–15 (2009).  Rather, the core requirement is simply that the agency "display awareness that it *is* changing position." *Id.* at 515; *see also Nat'l Ass'n of Home Builders v. EPA*, 682 F.3d 1032, 1037 (D.C. Cir. 2012) ("[A]n agency's view of what is in the public interest may change, either with or without a change in circumstances.").  The Executive Order has articulated why the United State has changed its policy, which affects all federal agencies, including BOP.  Disagreements with the new policy is insufficient to show that it is arbitrary and capricious, let along warranting emergency injunctive relief.

## III.    PLAINTIFF HAS NOT DEMONSTRATED IRREPARABLE HARM

Irreparable harm is a "necessary threshold showing for awarding preliminary injunctive relief." *Matos ex rel. Matos v. Clinton School Dist.*, 367 F.3d 68, 74 (1st Cir. 2004).  "The burden of demonstrating that a denial of interim relief is likely to cause irreparable harm rests squarely upon the movant." *Charlesbank Equity Fund II v. Blinds To Go, Inc.*, 370 F.3d 151, 162 (1st Cir. 2004).  Irreparable harm is not assumed; it must be demonstrated. *Narragansett Indian Tribe v. Guilbert*, 934 F.2d

4, 6 (1st Cir. 1991). And "speculative injury does not constitute a showing of irreparable harm." *Id.*

Here, Plaintiff has not demonstrated a likelihood of irreparable harm, largely for reasons already discussed. Plaintiff has not shown that Section 4(c) of the Order will result in irreparable harm because BOP has not yet revised its policies concerning medical care, and so it is not yet clear how, if it all, the revised policies will affect Plaintiff's medical care. Nor has Plaintiff demonstrated that the upcoming transfer to a men's facility will result in physical harm, given that the vast majority of male-to-female transgender inmates are currently housed in male facilities. Additionally, BOP has sought to minimize any risk to Plaintiff by ███████████ ██████████████████████████████.

## IV. THE BALANCE OF EQUITIES AND PUBLIC INTEREST FAVOR DEFENDANTS

"Prison administrators, and not the courts, are to make difficult judgments concerning institutional operations," *Turner*, 482 U.S. at 89, and courts "must accord substantial deference to [their] professional judgment," *Kuperman*, 645 F.3d at 74. As discussed above, the President, as the head of the Executive Branch with ultimate responsibility for the operation of its prisons, has decided to take certain actions to protect the privacy of female inmates in intimate spaces. Regardless of the public debate over these issues, there is a public interest in deferring to the Executive Branch's determination as to the operations of the Federal Bureau of Prisons, particularly given that the Executive Order is to be implemented in a manner "consistent with applicable law." Exec. Order § 8(b).

18

## V.    RELIEF AGAINST THE PRESIDENT IS IMPROPER

Although Plaintiff has named the President as a Defendant, federal courts have "'no jurisdiction of a bill to enjoin the President in the performance of his official duties.'" *Franklin v. Massachusetts*, 505 U.S. 788, 802–03 (1992) (quoting *Mississippi v. Johnson*, 71 U.S. 475, 501 (1866)); *see also Newdow v. Roberts*, 603 F.3d 1002, 1013 (D.C. Cir. 2010) ("[C]ourts do not have jurisdiction to enjoin [the President] . . . and have never submitted the President to declaratory relief."). Accordingly, the Court lacks jurisdiction to enter Plaintiffs' requested relief against the President and should dismiss him as a defendant in this case.

## CONCLUSION

The Court should dismiss the case or transfer it to the District of ███████. At a minimum, the Court should deny Plaintiff's request for emergency relief.

Dated:  January 28, 2025

Respectfully submitted,

BRETT A. SHUMATE
Acting Assistant Attorney General

DIANE KELLEHER
Director, Federal Programs Branch

/s/ Jean Lin
JEAN LIN  (NY #4074530)
Special Litigation Counsel
JOHN ROBINSON
ELIZABETH B. LAYENDECKER
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L. Street, NW
Washington D.C. 20005
(202) 514-3716
jean.lin@usdoj.gov

19