To UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

MARIA MOE,

          Plaintiff,

v.

DONALD TRUMP, *in his official capacity as* President of the United States, *et al.*,

          Defendants.

Case No.: 1:25-cv-00653-RCL

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR A RENEWED PRELIMINARY INJUNCTION**

**INTRODUCTION**

The facts that supported preliminary relief for Plaintiff Maria Moe remain unchanged. Plaintiff continues to be at substantial risk of serious harm if her medical care is terminated or if she is transferred to a men's facility. Plaintiff respectfully requests that the Court enter a new preliminary injunction for an additional ninety (90) days. Pursuant to the Prison Litigation Reform Act, the current preliminary injunction expires on June 8, 2025, unless the Court enters a renewed preliminary injunction. Plaintiff respectfully asks the Court to renew this preliminary injunction for the 90-day period from June 8 to August 23, 2025.[1] Defendants informed the Court in their stay motion that they would not oppose renewal of this preliminary injunction for ninety (90) days. ECF. No. 72 at 2 n.1. Accordingly, this motion is unopposed.

---

[1] The next ninety-day period would expire on September 6, 2025. However, counsel for Plaintiff Maria Moe wish to align deadlines amongst the related cases brought by other transgender women in federal prisons facing transfer to men's facilities.

## I.    STATEMENT OF FACTS

Plaintiff has previously detailed the facts giving rise to her claims.[2]  Plaintiff incorporates those prior statements of facts in addition to the summary here.  Plaintiff has resided in women's facilities for several years pursuant to individualized determinations made by the Bureau of Prisons (BOP).  And Plaintiff has been diagnosed with gender dysphoria, a serious but treatable medical condition, for which she has received consistent treatment from BOP.  Plaintiff faces a substantial risk of serious harm if she is transferred to a men's prison or if her medical treatment for gender dysphoria is terminated.  *See* Declaration of Maria Moe's Mother ("Moe Mother Decl."), ECF No. 32-3 ¶¶ 3–5, 7–10, 14–16; Declaration of Lauren Meade ("Meade Decl."), ECF No. 32-4 ¶¶ 2, 4–11.

In the months since Plaintiff initiated this lawsuit, Defendants have taken no action to reverse their discriminatory approach to housing and medical care for transgender women in BOP custody.  To the contrary, Defendants' memoranda, policy changes, and actions underscore their discriminatory purpose and their animus against transgender people.  For example, to comply with the Executive Order, Defendants have deleted the word "transgender" every time it appeared in agency documents.  For example, to comply with the Executive Order, Defendants have deleted the word "transgender" every time it appeared in "all external-facing" agency documents.  *See* Fed. Bureau of Prisons, *Agency Complies with Executive Order*, https://www.bop.gov/news/20250211-agency-complies-with-executive-order.jsp.    They have removed from the public domain their 56-page Clinical Guidance policy for "Gender-Affirming Care of Transgender and Gender Nonbinary Persons."  *See* Fed. Bureau of Prisons, *Gender-*

---

[2] *See* Memorandum of Points and Authorities in Support of Motion for Temporary Restraining Order, ECF No. 31-1 at 2–4; Motion to Transfer and Supporting Memorandum of Law, ECF No. 57 at 2–3.

*Affirming Care of Transgender and Gender Nonbinary Persons* (2023), https://perma.cc/U5UTS9PN.  And they have "cancelled" the Program Statement that specified the unique and serious risks transgender people face and the actions agency staff should take to mitigate those risks.  *See* Fed. Bureau of Prisons Program Statement Cancellation of Statement Number 5200.08, Cancellation No. PSC04-2025 (Feb. 25, 2025); *see also* U.S. Dep't of Just., Fed. Bureau of Prisons, *Transgender Offender Manual* at 1 (stating objective is "[t]o enhance staff's understanding of the increased risk of suicide.

Erasing mention of this specific population and the serious risks they face does not eliminate those risks, nor does it eliminate Defendants' knowledge of the risks.  It certainly does not excuse exposing Plaintiff to those risks.  Defendants' policies and conduct amount to paradigmatic deliberate indifference.

## II.    PROCEDURAL HISTORY

On January 20, 2025, President Trump issued Executive Order 14168.  On January 26, 2025, Plaintiff Maria Moe initiated this action seeking injunctive relief to prohibit Defendants from implementing Sections 4(a) and 4(c) of Executive Order 14168.  On the same day, the U.S. District Court for the District of Massachusetts issued a Temporary Restraining Order (TRO) enjoining Defendants from transferring Plaintiff to another BOP facility until further order of the Court.  ECF No. 12.  On February 7, 2025, the District of Massachusetts transferred this case to the District in which the Plaintiff was confined.  ECF No. 40.  That Court subsequently extended the TRO issued by the Massachusetts District Court.  ECF No. 49.  On March 6, 2025, the case was further transferred to this Court.  ECF No. 60.  On March 10, 2025, this Court issued a preliminary injunction enjoining the enforcement of relevant provisions of Executive Order 14168, including Section 4(a), against Plaintiff.  ECF No. 62.

On April 2, 2025, Defendants noticed an appeal of the Court's order issuing injunctive relief, focusing "only on whether transferring Plaintiff to a men's facility is illegal." ECF No. 65; ECF No. 72 at 2. On April 30, 2025, Defendants moved to stay further proceedings in the District Court until September 6, 2025, except with regard "to any motions to extend or renew the preliminary injunction," as well as "any issue that may arise from compliance with the preliminary injunction, the entry of any protective order, any motions to amend the complaint to add new plaintiffs and for preliminary injunctive relief regarding those plaintiffs, and other case management issues," while agreeing that "either side may move to lift the stay at any time." ECF No. 72 at 4. The Court granted the motion. ECF No. 75.

## III.    LEGAL STANDARD

An injunction issued in a lawsuit covered by the Prison Litigation Reform Act (PLRA) automatically expires after 90 days unless the court "render[s] it permanent" by "ma[king] specific findings that the restraint is narrowly drawn, extends no further than necessary to correct the violation of [the] federal right, and is the least intrusive means necessary to correct that violation." *Banks v. Booth*, 3 F.4th 445, 448 (D.C. Cir. 2021); *see also* 18 U.S.C. §§ 3626(a)(1)(A), 3626(a)(2). Alternatively, upon a showing by a plaintiff that preliminary relief remains necessary, the Court can impose a new preliminary injunction. "Nothing in the statute limits the number of times a court may enter preliminary relief." *Mayweathers v. Newland*, 258 F.3d 930, 936 (9th Cir. 2001); *see also Monroe v. Bowman*, 122 F.4th 688, 697 (7th Cir. 2024); *Smith v. Edwards*, 88 F.4th 1119, 1125 (5th Cir. 2023); *Alloway v. Hodge*, 72 F. App'x 812, 817 (10th Cir. 2003). The new injunction can be identical to the prior one, so long as the court makes the "needs-narrowness-intrusiveness" findings anew. *See Mayweathers*, 258 F.3d at 935–56. This Court can thus renew the relief currently in place—and thereby continue to preserve the status quo—by issuing a new injunction and finding that the relief is "narrowly drawn, extend[s] no further than necessary to

correct the harm the court finds requires preliminary relief, and [is] the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2).

*Winter* provides the familiar substantive standard. To obtain a preliminary injunction, Plaintiff must show that she is likely to succeed on the merits, that she is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in her favor, and that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). When the government is the defendant, the balance-of-equities and public-interest factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

## IV.    ARGUMENT

This Court has already concluded that Plaintiff is likely to succeed on the merits of her Eighth Amendment claim. ECF No. 62 at 1–2 (adopting the Courts' reasonings in the related cases of *Doe v. Bondi*, 1:25-cv-286-RCL, and *Jones v. Bondi*, 1:25-cv-401-RCL). Plaintiff incorporates by reference the arguments made in her prior motions. *See* ECF No. 31-1 at 6–22; ECF No. 33.

There have been no factual developments that would disrupt the Court's prior conclusions that Plaintiff has shown that she is likely to succeed on the merits of her Eighth Amendment Claim, that she will face irreparable harm in the absence of continued injunctive relief, and that the public interest and balance of equities weigh in favor of granting preliminary injunctive relief. For the reasons stated here and in Plaintiff's prior motions, Sections 4(a) and 4(c) of Executive Order 14168 and Defendants' implementation of it violate the Eighth Amendment, the Fifth Amendment's Due Process Guarantee, and the Administrative Procedure Act ("APA").[3]

---

[3] Plaintiff maintains additional claims as well but does not restate them here for purposes of seeking preliminary injunctive relief.

####        A.        **Plaintiff has shown a likelihood of success on the merits of her claims.**

####        1.        **Eighth Amendment Claim**

Plaintiff has previously shown that she is likely to succeed on the merits of her Eighth

Amendment claim. *See* ECF No. 31-1 at 12–16; ECF No. 33 at 6–7. The Executive Order's

*categorical* requirement that Plaintiff be transferred to a men's prison—despite a preexisting

individualized determination that a women's prison is the appropriate placement for her—

constitutes a failure to protect Plaintiff from a substantial risk of serious harm and deliberate

indifference to Plaintiff's serious risk of substantial bodily injury if transferred to a men's facility.

*See Farmer v. Brennan*, 511 U.S. 825, 839–40, 846 (1994). As this Court observed, Plaintiff is

"similarly situated to the plaintiffs in *Doe*[] and the plaintiffs in *Jones*[]," ECF No. 62 at 1, and

therefore this Court adopted the reasonings in those related cases, finding that Defendants have

"[s]ummarily remov[ed] the possibility of housing [Plaintiff] in a women's facility, when that was

determined to be the appropriate facility under the existing constitutional and statutory regime,"

*Doe* ECF No. 55 at 3. That policy violates the Eighth Amendment. *Id.*

Similarly, the Executive Order's categorical requirement that Plaintiff cease to receive

medical treatment for her gender dysphoria—which BOP has administered to Plaintiff for years—

amounts to a failure to protect and deliberate indifference. The Court has already made this

determination. ECF No. 62 at 1–2. Because nothing has changed, the Court should reach the same

conclusion again.

####        2.        **Equal Protection Claim**

As the Court has recognized, Plaintiff's Eighth Amendment claim is sufficient to sustain a

preliminary injunction preventing Defendants' implementation of Sections 4(a) and 4(c) of the

Executive Order with regard to Plaintiff. *Id.* Defendants' actions also violate Plaintiff's Equal

Protection rights. Plaintiff incorporates by reference the arguments in favor of her Equal

Protection claim from her prior motions detailing that Defendants' implementation of the Executive Order is subject to heightened scrutiny, and, so scrutinized, fails to pass constitutional muster. *See* ECF No. 31-1 at 6–12; ECF No. 33 at 4–6. Further, as set forth in Plaintiff's prior briefings, the Executive Order is based on animus and would fail even rational basis review. *See* ECF No. 31-1 at 12.

Defendants' implementation of Sections 4(a) and 4(c) of the Executive Order also violates the APA for the reasons set forth in Plaintiff's prior motions. *See* ECF No. 31-1 at 16–18; ECF No. 33 at 8–10. As Plaintiff has argued, BOP's blanket policies, mandated by the Executive Order, of transferring transgender women to men's facilities run contrary to PREA regulations, effectively rescind those regulations without following necessary procedures, and are arbitrary and capricious, unconstitutional, and not in accordance with law. *Id.* Similarly, BOP's blanket policies, mandated by the Executive Order, of denying medically necessary healthcare to transgender people, are arbitrary and capricious, unconstitutional, and not in accordance with law. To preserve this claim, Plaintiff incorporates these arguments by reference.

**B.      Plaintiff has shown that she faces irreparable harm without an injunction.**

This Court has previously found that Plaintiff would suffer irreparable harm without an order preventing Defendants from enforcing Sections 4(a) and 4(c). *See* ECF No. 62; *see also* ECF No. 12. Without a renewed injunction, Plaintiff will be transferred imminently to a male prison, where she will face an extremely high risk of sexual assault and physical violence. *See, e.g.*, *Greene v. Bowles*, 361 F.3d 290, 292 (6th Cir. 2004) (describing severe physical attack against a transgender woman by another prisoner); *Tay v. Dennison*, 457 F. Supp. 3d 657, 664–68 (S.D. Ill. 2020) (describing severe sexual misconduct against a transgender woman by prison staff and physical attack by a male prisoner).

Without injunctive relief, Plaintiff will also have her medically necessary hormone treatment and other care discontinued.  The denial of critical treatment for gender dysphoria would result in serious medical complications and physical changes, would worsen Plaintiff's symptoms of gender dysphoria, and would likely lead to serious and potentially life-threatening consequences, such as heightened risk of suicidality.  *See* Meade Decl. ECF No. 32-4 ¶¶ 2, 5–11.  Moreover, as the Court has recognized in the related *Doe* matter,

> placement in a male penitentiary *by itself* will exacerbate [Plaintiff's] symptoms of [her] gender dysphoria, even if [Plaintiff is] not subject to physical or sexual violence in [the] new facility— whether because [Plaintiff] will be subject to searches by male correctional officers, made to shower in the company of men, referred to as [male], forced to dress as [male], or simply because the mere homogenous presence of men will cause uncomfortable dissonance.

*Doe* ECF No. 55 at 3 n.2.

### C.    The balance of equities and the public interest weigh in favor of granting injunctive relief.

The balance of equities and public interest factors strongly favor a renewed injunction.  As the *Doe* Court has found, "the public interest in seeing the plaintiff[] relocated *immediately* to male facilities is slight at best.  And it is hard to cognize of *any* public interest in the immediate cessation of [Plaintiff's] hormone therapy," other than negligible cost savings and an abstract interest in furthering the Executive Branch's policy preferences.  *Doe* ECF No. 23 at 11.  By contrast, Plaintiff's interests are "not abstract at all."  *Id.*  That determination is equally true today as when the Court previously entered injunctive relief.  Defendants' interest in a radical departure from the status quo remains "slight at best."  *Id.*  Plaintiff's interest in relief from the Executive Order remains urgent.

**CONCLUSION**

The requested injunction is narrowly drawn and extends no further than necessary to correct and prevent the harm to Plaintiff that would result from implementation of the Executive Order. 18 U.S.C. § 3626(a)(2). It prohibits Defendants from applying only the challenged sections of the Executive Order and BOP's implementing memoranda, and it prohibits Defendants from doing so only as to Plaintiff. It is also the least intrusive means necessary to correct this harm. BOP has no discretion under the Executive Order to maintain Plaintiff's housing in a women's facility, nor to continue Plaintiff's necessary medical care. Thus, enjoining Defendants is the least intrusive action the Court could take that will ensure Plaintiff is not deprived of her rights. Finally, renewing the preliminary injunction for 90 days will have no adverse impact on public safety or the operation of the criminal justice system because the order will simply maintain the status of Plaintiff's medical care and housing while the litigation proceeds. For the foregoing reasons, Plaintiff respectfully requests that the Court renew the current injunction and relief contained therein until August 23, 2025.

Dated:  May 16, 2025

/s/ Alexander Shalom
Alexander Shalom
Natalie J. Kraner
LOWENSTEIN SANDLER LLP
One Lowenstein Drive
Roseland, NJ 07068
(973) 597-2500
ashalom@lowenstein.com
nkraner@lowenstein.com

Jennifer L. Levi
Sarah K. Austin (*admitted pro hac vice*)
GLBTQ Legal Advocates & Defenders
18 Tremont Street, Suite 950
Boston, MA 02108
(617) 426-1350
jlevi@glad.org
saustin@glad.org

Amy Whelan (*admitted pro hac vice*)
Christopher F. Stoll (*admitted pro hac vice*)
NATIONAL CENTER FOR LESBIAN RIGHTS
1401 21st St.
Ste #11548
Sacramento, CA 95811
415-365-1338
awhelan@nclrights.org
cstoll@nclrights.org

*Attorneys for Plaintiff*