UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

MARIA MOE,

          Plaintiff,

v.                                                    Case No.: 1:25-cv-00653-RCL

DONALD TRUMP, *in his official capacity
as* President of the United States, *et al.*,

          Defendants.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S
UNOPPOSED MOTION FOR A RENEWED PRELIMINARY INJUNCTION**

**<u>INTRODUCTION</u>**

The facts that supported preliminary and renewed relief for Plaintiff Maria Moe remain unchanged. Plaintiff continues to be at substantial risk of serious harm if her medical care is terminated or if she is transferred to a men's facility. Plaintiff respectfully requests that the Court enter a new preliminary injunction for an additional ninety (90) days. On May 22, 2025, the Court renewed the initial preliminary injunction for 90 days, ECF No. 84, which Defendants did not oppose, ECF. No. 72 at 2 n.1. Pursuant to the Prison Litigation Reform Act ("PLRA"), the current preliminary injunction expires on August 23, 2025, unless the Court enters a second renewed preliminary injunction. ECF No. 84; *see also* 18 U.S.C. § 3626(a)(2). Plaintiff respectfully asks the Court to renew this preliminary injunction for the 90-day period from August 23, 2025, to November 21, 2025. Defendants informed Plaintiff's counsel on July 24 that, as with the first renewed preliminary injunction, they do not oppose renewal of this preliminary injunction for 90 days. *See* Declaration of Alexander Shalom, Esq., Exhibit A. Accordingly, this motion is unopposed.

## I.    STATEMENT OF FACTS

Plaintiff has previously detailed the facts giving rise to her claims.[1]  Plaintiff incorporates those prior statements of facts in addition to the summary here.  Plaintiff has resided in women's facilities for several years pursuant to individualized determinations made by the Bureau of Prisons ("BOP").  And Plaintiff has been diagnosed with gender dysphoria, a serious but treatable medical condition, for which she has received consistent treatment from BOP.  Plaintiff faces a substantial risk of serious harm if she is transferred to a men's prison or if her medical treatment for gender dysphoria is terminated.  *See* Declaration of Maria Moe's Mother ("Moe Mother Decl."), ECF No. 32-3 ¶¶ 3–5, 7–10, 14–16; Declaration of Lauren Meade ("Meade Decl."), ECF No. 32-4 ¶¶ 2, 4–11.

As detailed in Plaintiff's first Motion for Renewal of the Preliminary Injunction, Defendants continue to defend the discriminatory and dangerous housing and medical policies laid out in Executive Order 14168 and in BOP's implementing memoranda, and they have appealed this Court's Orders enjoining the application of the housing policy to Plaintiff.  *See* ECF No. 83 at 2–3; Notice of Appeal ECF No. 65.  A renewed preliminary injunction is necessary to ensure that Defendants do not transfer Plaintiff to men's facilities—where she faces a substantial risk of sexual assault, physical violence, exacerbated gender dysphoria, and mental health decompensation—and to ensure Plaintiff's continued access to medically necessary treatment for gender dysphoria.

On June 3, 2025, the Court issued a preliminary injunction in the related case *Kingdom v. Trump*, a certified class action challenging the Executive Order's ban on medical treatment for gender dysphoria and BOP's policies implementing the ban.  *See* Order, *Kingdom v. Trump*, 1:25-cv-00691-RCL, ECF No.68 (June 3, 2025).  That injunction does not obviate Plaintiff's need for

---

[1] *See* ECF No. 31-1 at 2–4; ECF No. 57 at 2–3; ECF No. 83 at 2.

relief here. The *Kingdom* injunction deals exclusively with medical care. *Id.* (requiring BOP to provide class members "gender affirming hormone therapy and social accommodations in accordance with BOP policy and practice in effect immediately prior to Defendant Trump's issuance of Executive Order 14168 on January 20, 2025"). It does not address the housing and transfer policies at issue in this litigation. As to medical care, record evidence indicates a pattern of noncompliance at BOP facilities,[2] and Plaintiff has no independent ability to enforce the *Kingdom* injunction. In addition, the *Kingdom* injunction will automatically expire on September 1, 2025. Plaintiff has shown that she needs and is entitled to relief beyond that date. Further, because the basis for the relief ordered in *Kingdom* is the Administrative Procedure Act, it does not address Plaintiff's constitutional entitlement to medically necessary care. Plaintiff therefore has an ongoing need for preliminary injunctive relief.

## II.    PROCEDURAL HISTORY

On January 20, 2025, President Trump issued Executive Order 14168. On January 26, 2025, Plaintiff Maria Moe initiated this action seeking injunctive relief to prohibit Defendants from implementing Sections 4(a) and 4(c) of Executive Order 14168. On the same day, the U.S. District Court for the District of Massachusetts issued a Temporary Restraining Order ("TRO") enjoining Defendants from transferring Plaintiff to another BOP facility until further order of the Court. ECF No. 12. On February 7, 2025, the District of Massachusetts transferred this case to the District in which the Plaintiff was confined. ECF No. 40. That Court subsequently extended the TRO issued by the Massachusetts District Court. ECF No. 49. On March 6, 2025, the case was transferred to this Court. ECF No. 60. On March 10, 2025, this Court issued a preliminary injunction enjoining

---

[2] *See* Declaration of Corene T. Kendrick in Support of Plaintiffs' Motion for Renewed Preliminary Injunction, *Kingdom v. Trump*, 1:25-cv-00691-RCL, ECF No. 78-2 at 8–9 (Aug. 8, 2025).

the enforcement of Sections 4(a) and 4(c) of Executive Order 14168 against Plaintiff. ECF No. 62.

On April 2, 2025, Defendants noticed an appeal of the Court's order issuing injunctive relief, focusing "only on whether transferring Plaintiff to a men's facility is illegal." ECF No. 65; ECF No. 72 at 2. On April 30, 2025, Defendants moved to stay further proceedings in the District Court until September 6, 2025, except with regard "to any motions to extend or renew the preliminary injunction," as well as "any issue that may arise from compliance with the preliminary injunction, the entry of any protective order, any motions to amend the complaint to add new plaintiffs and for preliminary injunctive relief regarding those plaintiffs, and other case management issues," while agreeing that "either side may move to lift the stay at any time." ECF No. 72 at 4. The Court granted the motion. ECF No. 75. Defendants' appeal has been fully briefed and is currently scheduled for oral argument on September 5, 2025.

On May 16, 2025, Plaintiff moved to renew the preliminary injunction, which Defendants did not oppose. *See* ECF No. 83. On May 22, 2025, the Court renewed the preliminary injunction for an additional 90 days until August 23, 2025. *See* ECF No. 84. Specifically, the Court explained that it was not "aware of any newly discovered factual circumstances that would necessitate a reassessment of the Court's prior holding that the plaintiff has met her burden for preliminary injunctive relief or a reevaluation of the terms of that relief." *Id.* at 1.

## III.    LEGAL STANDARD

An injunction issued in a lawsuit covered by the PLRA automatically expires after 90 days unless the court "render[s] it permanent" by "ma[king] specific findings that the restraint is narrowly drawn, extends no further than necessary to correct the violation of [the] federal right, and is the least intrusive means necessary to correct that violation." *Banks v. Booth*, 3 F.4th 445, 448 (D.C. Cir. 2021); *see also* 18 U.S.C. §§ 3626(a)(1)(A), 3626(a)(2). Alternatively, upon a

4

showing by a plaintiff that preliminary relief remains necessary, the Court can impose a new preliminary injunction. "Nothing in the statute limits the number of times a court may enter preliminary relief." *Mayweathers v. Newland*, 258 F.3d 930, 936 (9th Cir. 2001); *see also Monroe v. Bowman*, 122 F.4th 688, 697 (7th Cir. 2024); *Smith v. Edwards*, 88 F.4th 1119, 1125 (5th Cir. 2023); *Alloway v. Hodge*, 72 F. App'x 812, 817 (10th Cir. 2003). The new injunction can be identical to the prior one, so long as the court makes the "needs-narrowness-intrusiveness" findings anew. *See Mayweathers*, 258 F.3d at 935–36. This Court can thus renew the relief currently in place—and thereby continue to preserve the status quo—by issuing a second renewed injunction and finding that the relief is "narrowly drawn, extend[s] no further than necessary to correct the harm the court finds requires preliminary relief, and [is] the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2).

*Winter* provides the familiar substantive standard. To obtain a preliminary injunction, Plaintiff must show that she is likely to succeed on the merits, that she is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in her favor, and that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). When the government is the defendant, the balance-of-equities and public-interest factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

## IV.    ARGUMENT

This Court has already concluded that Plaintiff has met her burden for preliminary injunctive relief. ECF No. 62 at 1–2 (adopting the Courts' reasonings in the related cases of *Doe v. Bondi*, 1:25-cv-286-RCL, and *Jones v. Bondi*, 1:25-cv-401-RCL); *see also* ECF No. 84 at 2 (renewing preliminary injunction because it "prevents the implementation of only those sections of the [Executive] Order for which the plaintiff has demonstrated a likelihood of success on the merits and immediate, irreparable harm if a preliminary injunction is not entered"). Plaintiff

incorporates by reference the arguments made in her prior motions.  *See* ECF No. 31-1 at 6–22; ECF No. 33; ECF No. 83 at 5–8.

Aside from the preliminary injunction entered in *Kingdom*, which does not address the constitutional injuries Plaintiff faces as discussed above, there have been no factual developments that would disrupt the Court's prior conclusions.  Plaintiff has shown that she is likely to succeed on the merits of her claims; that she will face irreparable harm in the absence of continued injunctive relief; and that the public interest and balance of equities weigh in favor of granting preliminary injunctive relief.  *See* ECF No. 84 at 1–2.  That continues to hold true for the period that has elapsed since the Court renewed the Preliminary Injunction on May 22, 2025.  For the reasons stated here and in Plaintiff's prior motions, Sections 4(a) and 4(c) of Executive Order 14168 and Defendants' implementation of it violate the Eighth Amendment, the Fifth Amendment's Due Process Guarantee, and the Administrative Procedure Act ("APA").[3]

## A.    Plaintiff has shown a likelihood of success on the merits of her claims.

### 1.    Eighth Amendment Claim

Plaintiff has previously shown that she is likely to succeed on the merits of her Eighth Amendment claim.  *See* ECF No. 31-1 at 12–16; ECF No. 33 at 6–7; ECF No. 83 at 6.  The Executive Order's categorical requirement that Plaintiff be transferred to a men's prison—despite a preexisting individualized determination that she should be housed in a women's prison—constitutes a failure to protect Plaintiff from a substantial risk of serious harm and deliberate indifference to those risks if transferred to a men's facility.  *See Farmer v. Brennan*, 511 U.S. 825, 839–40, 846 (1994).  As this Court observed, Plaintiff is "similarly situated to the plaintiffs in *Doe*[] and the plaintiffs in *Jones*[]," ECF No. 62 at 1, and therefore this Court adopted the

---

[3] Plaintiff maintains additional claims as well but does not restate them here for purposes of seeking preliminary injunctive relief.

reasonings in those related cases, finding that Defendants have "[s]ummarily remov[ed] the possibility of housing [Plaintiff] in a women's facility, when that was determined to be the appropriate facility under the existing constitutional and statutory regime," *Doe* ECF No. 55 at 3. That policy violates the Eighth Amendment. *Id.*

Similarly, the Executive Order's categorical requirement that BOP terminate medical treatment for Plaintiff's gender dysphoria—treatment BOP has administered to Plaintiff for years—amounts to a failure to protect and deliberate indifference. The Court has already made this determination. *See* ECF No. 62 at 1–2; ECF No. 84 at 2–3. Because no relevant circumstances have changed, the Court should reach the same conclusion again.

### 2.    Equal Protection Claim

As the Court has recognized, Plaintiff's Eighth Amendment claim is sufficient to sustain a preliminary injunction preventing Defendants' implementation of Sections 4(a) and 4(c) of the Executive Order with regard to Plaintiff. *Doe* ECF No. 55 at 3. Defendants' actions also violate Plaintiff's Equal Protection rights. Plaintiff incorporates by reference the arguments in favor of her Equal Protection claim from her prior motions detailing that Defendants' implementation of the Executive Order is subject to heightened scrutiny, and, so scrutinized, fails to pass constitutional muster. *See* ECF No. 31-1 at 6–12; ECF No. 33 at 4–6; ECF No. 83 at 6–7. Further, as set forth in Plaintiff's prior briefings, the Executive Order is based on animus and BOP's implementation of its mandates would fail even rational basis review. *See* ECF No. 31-1 at 12.

### 3.    APA Claim

In addition, for the reasons set forth in Plaintiff's prior motions, Defendants' implementation of the Executive Order violates the APA. *See* ECF No. 31-1 at 16–18; ECF No. 33 at 8–10; ECF No. 83 at 7. As Plaintiff has argued, BOP's blanket policies, mandated by the Executive Order, of transferring transgender women to men's facilities run contrary to PREA

regulations, effectively rescind those regulations without following necessary procedures, and are arbitrary and capricious; unconstitutional; and not in accordance with law. *See* ECF No. 31-1 at 16–18. Similarly, BOP's blanket policies, mandated by the Executive Order, of denying medically necessary healthcare to transgender people are arbitrary and capricious; unconstitutional; and not in accordance with law. *Id.* To preserve this claim, Plaintiff incorporates these arguments by reference.

### B. Plaintiff continues to face irreparable harm without an injunction.

This Court has previously found—including in the May 22 Order Renewing the Preliminary Injunction—that Plaintiff would suffer irreparable harm without an order preventing Defendants from enforcing Sections 4(a) and 4(c). *See* ECF Nos. 62, 84; *see also* ECF No. 12. Without a second renewed injunction, Plaintiff will be transferred imminently to a male prison, where she will face an extremely high risk of sexual assault and physical violence. *See, e.g.*, *Greene v. Bowles*, 361 F.3d 290, 292 (6th Cir. 2004) (describing severe physical attack against a transgender woman by another prisoner); *Tay v. Dennison*, 457 F. Supp. 3d 657, 664–68 (S.D. Ill. 2020) (describing severe sexual misconduct against a transgender woman by prison staff and physical attack by a male prisoner).

Injunctive relief is also necessary to ensure BOP's ongoing provision of constitutionally required and medically necessary hormone treatment and other care for gender dysphoria. The denial of critical treatment for gender dysphoria would result in serious medical complications and physical changes, would worsen Plaintiff's symptoms of gender dysphoria, and would likely lead to serious and potentially life-threatening consequences, such as heightened risk of suicidality. *See* Meade Decl. ECF No. 32-4 ¶¶ 2, 5–11. Moreover, as the Court has recognized in the related *Doe* matter,

> placement in a male penitentiary *by itself* will exacerbate [Plaintiff's] symptoms of [her] gender dysphoria, even if [Plaintiff is] not subject to physical or sexual violence in [the] new facility— whether because [Plaintiff] will be subject to searches by male correctional officers, made to shower in the company of men, referred to as [male], forced to dress as [male], or simply because the mere homogenous presence of men will cause uncomfortable dissonance.

*Doe* ECF No. 55 at 3 n.2 (quoting *Doe* ECF No. 23).

**C.     The balance of equities and the public interest weigh in favor of granting injunctive relief.**

The balance of equities and public interest factors strongly favor a renewed injunction.

This Court has already

> considered any adverse impact on public safety or on the operation of the criminal justice system caused by this relief and has given substantial weight to such impacts.  After this consideration, the Court has concluded and so finds that no adverse impacts on the public safety or the operation of the criminal justice system will result from maintaining the status quo of the plaintiff's medical care and housing status while this litigation proceeds.

ECF No. 84 at 2–3 (internal citation omitted).

Further, as the *Doe* Court has found, "the public interest in seeing the plaintiff[] relocated *immediately* to male facilities is slight at best."  *Doe* ECF No. 23 at 11.  And continuing to provide medically necessary care to Plaintiff would not unduly burden the government or harm the public.  On the other side of the scale are Plaintiff's weighty interests in protection from bodily harm, interests that are "not abstract at all."  *Id.*  The Court's prior determinations are equally true today.

**D.     The renewed injunction meets the PLRA's requirements.**

The requested injunction is narrowly drawn and extends no further than necessary to correct and prevent the harm to Plaintiff that would result from implementation of the Executive Order.  18 U.S.C. § 3626(a)(2).  It prohibits Defendants from applying only the challenged sections of the Executive Order and BOP's implementing memoranda, and it prohibits Defendants from

doing so only as to Plaintiff.  It is also the least intrusive means necessary to correct this harm. BOP has no discretion under the Executive Order to maintain Plaintiff's housing in a women's facility, or to continue Plaintiff's necessary medical care.  Thus, enjoining Defendants is the least intrusive action the Court could take that will ensure Plaintiff is not deprived of her rights.  Finally, renewing the preliminary injunction for 90 days will have no adverse impact on public safety or the operation of the criminal justice system because the order will simply maintain the status of Plaintiff's medical care and housing while the litigation proceeds.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court enter a new preliminary injunction, renewing the relief contained therein for an additional ninety (90) days from August 23, 2025 until November 21, 2025.

Dated:  August 18, 2025                    /s/ Alexander Shalom

Alexander Shalom
Natalie J. Kraner
LOWENSTEIN SANDLER LLP
One Lowenstein Drive
Roseland, NJ 07068
(973) 597-2500
ashalom@lowenstein.com
nkraner@lowenstein.com

Jennifer L. Levi
Sarah K. Austin (*admitted pro hac vice*)
GLBTQ Legal Advocates & Defenders
18 Tremont Street, Suite 950
Boston, MA 02108
(617) 426-1350
jlevi@glad.org
saustin@glad.org

Amy Whelan (*admitted pro hac vice*)
Christopher F. Stoll (*admitted pro hac vice*)
NATIONAL CENTER FOR LESBIAN RIGHTS
1401 21st St.
Ste #11548
Sacramento, CA 95811
415-365-1338
awhelan@nclrights.org
cstoll@nclrights.org

*Attorneys for Plaintiff*