UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| MARIA MOE,<br><br>        Plaintiff,<br><br>v.<br><br>DONALD TRUMP, *in his official capacity as* President of the United States, *et al.*,<br><br>        Defendants. | Case No.: 1:25-cv-00653-RCL |

# MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR A NEW PRELIMINARY INJUNCTION

## INTRODUCTION

This Court issued a preliminary injunction on August 20, 2025, that will soon expire on November 21, 2025. ECF No. 90. The facts that support preliminary injunctive relief for Plaintiff Maria Moe remain unchanged. Plaintiffs respectfully request that the Court enter a new preliminary injunction for an additional ninety (90) days to protect Plaintiff from the serious harms that would arise if Sections 4(a) and 4(c) of Executive Order 14168 ("Executive Order" or "EO") are applied to her.

On August 20, 2025, the Court issued for the second time a new preliminary injunction for ninety days that maintained the *status quo ante* for Plaintiff's housing in women's facilities and access to medical care as it existed immediately prior to January 20, 2025. *Id.* At that time: the injunction then in place was soon to expire, Defendants did not oppose injunctive relief for another ninety days, and the Court was not aware of any "newly discovered factual circumstances that necessitate a reassessment of the Court's prior holding that the plaintiff has met her burden for preliminary injunctive relief or a

reevaluation of the terms of that relief." *Id.* at 1. The parties are at the same juncture again. The Court's August 20, 2025, preliminary injunction will expire on November 21, 2025. *Id.*; *see also* 18 U.S.C. § 3626(a)(2). Defendants do not oppose Plaintiff's motion for a new ninety-day preliminary injunction. Declaration of Alexander Shalom, Esq. ("Shalom Decl."), Ex. A. And the facts that have supported preliminary injunctive relief since this case was first filed remain unchanged. Absent an injunction, Plaintiff remains at a substantial risk of serious harm because the Executive Order requires the Bureau of Prisons ("BOP") to transfer her to a men's facility. A new injunction is also necessary to ensure Plaintiff's continued access to medically necessary care for gender dysphoria. Accordingly, Plaintiff respectfully makes this unopposed request that the Court enter a new preliminary injunction for a ninety-day period from November 21, 2025, through February 19, 2026.

I.     **STATEMENT OF FACTS**

Plaintiff has previously detailed the facts giving rise to her claims in her previously-filed declarations and motions in support of preliminary injunctive relief.[1] Plaintiff incorporates those prior statements of facts in addition to the summary here. Plaintiff has resided in a women's facility for several years pursuant to individualized determinations made by the BOP. And Plaintiff has been diagnosed with gender dysphoria, a serious but

---

[1] *See* Memorandum of Points and Authorities in Support of Motion for Emergency Temporary Restraining Order and Preliminary Injunction, ECF No. 31-1 at 2–4; Plaintiff's Motion to Transfer and Supporting Memorandum of Law, ECF No. 57 at 2–3; Memorandum of Points and Authorities in Support of Unopposed Motion for Renewed Preliminary Injunction, ECF No. 83 at 2.

treatable medical condition, for which she has received consistent treatment from the BOP. Plaintiff faces a substantial risk of serious harm from the Executive Order's mandate that BOP transfer her to a men's prison and terminate her medical treatments. *See* Declaration of Maria Moe's Mother ("Moe Mother Decl."), ECF No. 32-3 ¶¶ 3–5, 7–10, 14–16; Declaration of Lauren Meade ("Meade Decl."), ECF No. 32-4 ¶¶ 2, 4–11.

Since Plaintiff initiated this lawsuit, Defendants continue to defend the discriminatory and dangerous housing and medical policies laid out in Executive Order 14168 and in BOP's implementing memoranda, and they have appealed this Court's Orders enjoining the housing (but not medical care) policy to Plaintiff. *See* ECF Nos. 65, 85, 92; ECF No. 72 at 2 ("Defendants' appeal will focus only on whether transferring Plaintiff to a men's facility is illegal."). A new preliminary injunction is necessary to ensure that Defendants do not transfer Plaintiff to a men's facility—where she faces a substantial risk of sexual assault, physical violence, exacerbated gender dysphoria, and mental health decompensation—and to ensure Plaintiff's continued access to medically necessary treatment for gender dysphoria.

On August 20, 2025, the Court issued a preliminary injunction in the related case *Kingdom v. Trump*, a certified class action challenging the Executive Order's ban on medical treatment for gender dysphoria and BOP's policies implementing the ban. *See* Order Granting Plaintiffs' Motion for Renewed Preliminary Injunction, *Kingdom v. Trump*, 1:25-cv-00691-RCL, ECF No. 79 (Aug. 20, 2025). That injunction does not obviate Plaintiff's need for relief here. The *Kingdom* injunction deals exclusively with medical care under Section 4(c) of the EO. *Id.* at 2 (requiring BOP to "restore and maintain access

3

to those treatment modalities for those who previously received them pursuant to a prescription rendered by BOP staff."). It does not address the housing and transfer policies at issue in this litigation. As to medical care, while Plaintiff is a member of the class covered by the *Kingdom* injunction, record evidence in that case indicates a pattern of noncompliance at BOP facilities, Declaration of Corene T. Kendrick In Support of Plaintiffs' Motion for Renewed Preliminary Injunction, *Kingdom v. Trump*, 1:25-cv-00691-RCL, ECF No. 78-2 at 8–9 (August 8, 2025), and Plaintiff has no independent ability to enforce the *Kingdom* injunction. Moreover, as of the date of this motion, the injunction in *Kingdom* will soon expire and a new one has not yet been issued. Finally, because the basis for the relief ordered in *Kingdom* is the Administrative Procedure Act, it does not address Plaintiffs' constitutional entitlement to medically necessary care. For all these reasons, Plaintiff has an ongoing need for preliminary injunctive relief.

## II.    PROCEDURAL HISTORY

On January 26, 2025, Plaintiff Maria Moe initiated this action seeking injunctive relief to prohibit Defendants from implementing Sections 4(a) and 4(c) of Executive Order 14168, which mandates Plaintiff's transfer and the termination of all medical care related to her gender dysphoria. On the same day, the U.S. District Court for the District of Massachusetts issued a Temporary Restraining Order ("TRO") enjoining Defendants from transferring Plaintiff to another BOP facility until further order of the Court. ECF No. 12. On February 7, 2025, the District of Massachusetts transferred this case to the District in which the Plaintiff was confined. ECF No. 40. That Court subsequently extended the TRO issued by the Massachusetts District Court. ECF No. 49. On March 6, 2025, the case was

transferred to this Court.  ECF No. 60.  On March 10, 2025, this Court issued a preliminary injunction enjoining the enforcement of Sections 4(a) and 4(c) of Executive Order 14168 against Plaintiff.  ECF No. 62.

On April 2, 2025, Defendants noticed an appeal of the Court's order issuing injunctive relief, focusing "only on whether transferring Plaintiff to a men's facility is illegal."  ECF No. 65; ECF No. 72 at 2.  On April 30, 2025, Defendants moved to stay further proceedings in the District Court until September 6, 2025, except with regard "to any motions to extend or renew the preliminary injunction," as well as "any issue that may arise from compliance with the preliminary injunction, the entry of any protective order, any motions to amend the complaint to add new plaintiffs and for preliminary injunctive relief regarding those plaintiffs, and other case management issues," while agreeing that "either side may move to lift the stay at any time."  ECF No. 72 at 4.  The Court granted the motion.  ECF No. 75.  Defendants' appeal was argued before the Court of Appeals for the District of Columbia on September 5, 2025.  The Court's decision is currently pending. Defendants have represented that they will move to continue the stay.  *See* Shalom Decl., Ex. A.

On May 16, 2025, Plaintiff moved for a new preliminary injunction, which Defendants did not oppose.  *See* ECF No. 83.  On May 22, 2025, the Court issued a new preliminary injunction for an additional ninety days until August 23, 2025.  *See* ECF No. 84. Specifically, the Court explained that it was not "aware of any newly discovered factual circumstances that would necessitate a reassessment of the Court's prior holding that the plaintiff has met her burden for preliminary injunctive relief or a reevaluation of the terms

5

of that relief." *Id.* at 1.

Plaintiff filed another unopposed motion for a new preliminary injunction on August 18, 2025, because the injunction then in place was soon to expire. ECF No. 88. On August 20, 2025, the Court granted Plaintiff's motion and issued a preliminary injunction for the period of August 23, 2025 through November 21, 2025. ECF No. 90. Defendants were "enjoined from implementing Sections 4(a) and 4(c) of Executive Order 14168 against any plaintiff in this action." *Id.* at 1. The Court further ordered Defendants to "maintain and continue plaintiff's housing status in a women's facility" and to "continue to provide her gender dysphoria treatment as it existed immediately prior to January 20, 2025." *Id.* at 1–2.

## III.   LEGAL STANDARD

An injunction issued in a lawsuit covered by the Prison Litigation Reform Act ("PLRA") automatically expires after ninety days unless the court "render[s] it permanent" by "ma[king] specific findings that the restraint is narrowly drawn, extends no further than necessary to correct the violation of [the] federal right, and is the least intrusive means necessary to correct that violation." *Banks v. Booth*, 3 F.4th 445, 448 (D.C. Cir. 2021); *see also* 18 U.S.C. §§ 3626(a)(1)(A), 3626(a)(2). Alternatively, and as all parties agree, upon a showing by Plaintiff that preliminary relief remains necessary, the Court can issue a new preliminary injunction. *See* Supplemental Brief for Appellants, *Doe v. Bondi*, Nos. 25-5099, 25-5101, 25-5208, at 6–13 (D.C. Cir. Sept. 24, 2025). "Nothing in the statute limits the number of times a court may enter preliminary relief." *Mayweathers v. Newland*, 258 F.3d 930, 936 (9th Cir. 2001); *see also Monroe v. Bowman*, 122 F.4th 688, 697 (7th Cir.

2024); *Smith v. Edwards*, 88 F.4th 1119, 1125 (5th Cir. 2023); *Alloway v. Hodge*, 72 F. App'x 812, 817 (10th Cir. 2003). The new injunction can be identical to the prior one, so long as the court makes the "needs-narrowness-intrusiveness" findings anew. *See Mayweathers*, 258 F.3d at 935–36.

This Court can thus preserve the *status quo ante*—by issuing a new injunction and finding that the relief is "narrowly drawn, extend[s] no further than necessary to correct the harm the court finds requires preliminary relief, and [is] the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2).

*Winter* provides the familiar substantive standard. To obtain a preliminary injunction, Plaintiff must show that she is likely to succeed on the merits, that she is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in her favor, and that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Because the government is the defendant, the harm to the opposing party and public interest merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

IV.   **ARGUMENT**

This Court has already concluded that Plaintiff has met her burden for preliminary injunctive relief. ECF No. 62 at 1–2 (adopting the Courts' reasonings in the related cases of *Doe v. Bondi*, 1:25-cv-286-RCL, and *Jones v. Trump*, 1:25-cv-401-RCL); *see also* ECF No. 84 at 2 (renewing preliminary injunction because it "prevents the implementation of only those sections of the [Executive] Order for which the plaintiff has demonstrated a likelihood of success on the merits and immediate, irreparable harm if a preliminary injunction is not entered"); ECF No. 90 (same). Plaintiff incorporates by reference the

arguments made in her prior motions. *See* ECF No. 31-1 at 6–22; ECF No. 33; ECF No. 83 at 5–8.

Because there have been no material changes in the facts underlying this case, and because Plaintiffs continue to face the same irreparable harms, this Court should issue a new preliminary injunction. Plaintiff has shown that she is likely to succeed on the merits of her claims; she will face irreparable harm in the absence of continued injunctive relief; and the public interest and balance of equities weigh in favor of granting preliminary injunctive relief. That continues to hold true for the period that has elapsed since the Court issued the most recent preliminary injunction on August 20, 2025. For the reasons stated here and in Plaintiff's prior motions, Sections 4(a) and 4(c) of the Executive Order and Defendants' implementation of it violate the Eighth Amendment, the Fifth Amendment's Due Process Guarantee, and the Administrative Procedure Act ("APA").[2]

    **A.**    **Plaintiff Continues to Show a Likelihood of Success on the Merits of her Claims.**

        **1.**    **Eighth Amendment Claim**

Plaintiff has previously shown that she is likely to succeed on the merits of her Eighth Amendment claim. *See* ECF No. 31-1 at 12–16; ECF No. 33 at 6–7; ECF No. 83 at 6. The Executive Order's categorical requirement that Plaintiff, who has only ever been housed in women's facilities while in BOP custody, be transferred to a men's facility constitutes a failure to protect Plaintiff from a substantial risk of serious harm and

---

[2] Plaintiff maintains additional claims as well, but does not restate them here for purposes of seeking preliminary injunctive relief.

deliberate indifference to those risks if transferred to a men's facility. *See Farmer v. Brennan*, 511 U.S. 825, 839–40, 846 (1994). As this Court observed, "the same reasoning from the Court's TRO and PI Orders in [*Doe* and *Jones*] applies here," ECF No. 62 at 1, finding that Defendants have "[s]ummarily remov[ed] the possibility of housing the plaintiffs in a women's facility, when that was determined to be the appropriate facility under the existing constitutional and statutory regime," *Doe* ECF No. 55 at 3.

Plaintiff's early transition, long-term hormone therapy, and housing history while in BOP custody further demonstrate her heightened risk. *See* Moe Mother Decl., ECF No. 32-3 ¶¶ 4, 7–8, 10, 13–16; Meade Decl., ECF No. 32-4 ¶¶ 5–11. Starting in high school ▮▮▮ Plaintiff had already undergone extensive medical treatment to transition and live as a woman, including hormone replacement therapy from a doctor specialized in providing healthcare to transgender young adults. Moe Mother Decl., ECF No. 32-3 ¶¶ 4–5.



*See* Complaint, ECF No. 1 ¶¶ 34–35. The BOP agreed and after careful evaluation of the PREA regulatory factors designed to protect vulnerable incarcerated individuals from violence, *see* 28 C.F.R. § 115.41, the BOP has only housed Plaintiff in its women's facilities due to her obvious vulnerability to sexual

violence and harassment in men's facilities. Moe Mother Decl. ¶¶ 7–9, 13. As the BOP has repeatedly recognized during Plaintiffs' multi-year placement evaluations, housing Plaintiff in a men's facility would place her at substantial risk of serious harm due to her medical and social histories. The only thing that has changed is the issuance of the Executive Order, which categorically demands Plaintiff's placement in a men's facility. The deliberate indifference towards Plaintiffs' risks of harm that is required under the Executive Order contravenes the Eighth Amendment.

The Court's prior findings regarding Plaintiff's challenge to Section 4(a) of the Executive Order continue to this day, as Plaintiff has shown that she would face a substantial risk of serious harm if transferred to a men's facility due to her particular medical and social history, female appearance, prior placement in only women's facilities, status as a transgender woman who would be stigmatized and targeted for being transferred from a women's to men's facility, and the effects that living in a men's facility would have on her gender dysphoria.

Similarly, the Executive Order's categorical requirement that BOP terminate medical treatment for Plaintiff's gender dysphoria—treatment BOP has administered to Plaintiff for years—amounts to a failure to protect and deliberate indifference. The Court has already made this determination several times. *See* ECF No. 62 at 1–2; ECF No. 84 at 2–3; ECF No. 90 at 1–2. Plaintiff has been receiving ongoing hormone medication to treat her gender dysphoria since she was in high school, ▇▇▇▇▇▇ and prior to any interaction with BOP. *See* Moe Mother Decl., ECF No. 32-3 ¶¶ 4–5. If her hormone medications are cut off, she will face a serious risk of substantial physical harm, ranging from severe

10

medical complications, to mental health decompensation, suicidality, and severely exacerbated gender dysphoria. *See* Meade Decl., ECF No. 32-4 ¶¶ 2, 7–8. Because no relevant circumstances have changed, the Court should reach the same conclusion again.

        **2.**      **APA Claim**

As the Court has recognized, Plaintiff's Eighth Amendment claims are sufficient to sustain a preliminary injunction preventing Defendants' implementation of Sections 4(a) and 4(c) of the Executive Order with regard to Plaintiff. *See Doe* ECF No. 55 at 3. For the reasons set forth in Plaintiff's prior motions, Defendants' implementation of the Executive Order also violates the APA. *See* ECF No. 31-1 at 16–18; ECF No. 33 at 8–10; ECF No. 83 at 7. As Plaintiff has argued, BOP's blanket policy, mandated by the Executive Order, of transferring transgender women to men's facilities runs contrary to PREA regulations, effectively rescinds those regulations without following necessary procedures, and is arbitrary and capricious, unconstitutional, and not in accordance with law. *See* ECF No. 31-1 at 16–18. Similarly, BOP's blanket policy, mandated by the Executive Order, of denying medically necessary healthcare to transgender people, is arbitrary and capricious, unconstitutional, and not in accordance with law. *Id*. Plaintiff incorporates these arguments from prior motions by reference.

        **3.**      **Equal Protection Claim**

Defendants' actions also violate Plaintiff's rights under the Equal Protection clause. Plaintiff incorporates by reference the arguments in favor of her Equal Protection claim from her prior motions explaining that Defendants' implementation of the Executive Order is subject to heightened scrutiny, and, so scrutinized, fails to pass constitutional muster.

*See* ECF No. 31-1 at 6–12; ECF No. 33 at 4–6; ECF No. 83 at 6–7.  As set forth in Plaintiff's prior briefings, the Executive Order is based on animus and would fail even rational basis review.  *See* ECF No. 31-1 at 12.

### B. Plaintiff Continues to Face Irreparable Harm Without an Injunction.

This Court has previously found that Plaintiff would suffer irreparable harm without an order preventing Defendants from enforcing Sections 4(a) and 4(c).  *See* ECF Nos. 62, 84, 90; *see also* ECF No. 12.  Without a renewed injunction, Plaintiff will be transferred imminently to a male prison, where she will face an extremely high risk of sexual assault, physical violence, exacerbated gender dysphoria, and mental health decompensation.  *See*, *e.g.*, *Greene v. Bowles*, 361 F.3d 290, 292 (6th Cir. 2004) (describing severe physical attack against a transgender woman by another prisoner); *Tay v. Dennison*, 457 F. Supp. 3d 657, 664–68 (S.D. Ill. 2020) (describing severe sexual misconduct against a transgender woman by prison staff and physical attack by a male prisoner).

Injunctive relief is also necessary to ensure BOP's provision of constitutionally required and medically necessary hormone treatment and other care for gender dysphoria.  The denial of critical treatment for gender dysphoria would result in serious medical complications and physical changes, would worsen Plaintiff's symptoms of gender dysphoria, and would likely lead to serious and potentially life-threatening consequences, such as heightened risk of suicidality.  *See* Meade Decl. ECF No. 32-4 ¶¶ 2, 5–11.  Moreover, as the Court has recognized, "placement in a male penitentiary *by itself* will exacerbate the symptoms of [Plaintiff's] gender dysphoria, *even if* [she is] not subject to physical or sexual violence in [her] new facility—whether because [she] will be subject to

searches by male correctional officers, made to shower in the company of men, referred to as [male], forced to dress as [male], or simply because the mere homogenous presence of men will cause uncomfortable dissonance." *Doe* ECF No. 55 at 3 n.2. (quoting *Doe* ECF No. 23).

> C. **The Balance of Equities and the Public Interest Weigh in Favor of New Injunctive Relief.**

The balance of equities and public interest factors strongly favor a new injunction. This Court has already

> considered any adverse impact on public safety or on the operation of the criminal justice system caused by this relief and has given substantial weight to such impacts. After this consideration, the Court has concluded and so finds that no adverse impacts on the public safety or the operation of the criminal justice system will result from maintaining the status quo of the plaintiff's medical care and housing status while this litigation proceeds.

ECF No. 84 at 2–3 (internal citation omitted).

Further, as this Court found in *Doe*, "the public interest in seeing the plaintiff[] relocated *immediately* to [a] male facilit[y] is slight at best." *Doe* ECF No. 23 at 11. And continuing to provide medically necessary care to Plaintiff would not unduly burden the government or harm the public. On the other side of the scale are Plaintiff's weighty interests in protection from bodily harm, interests that are "not abstract at all." *Id.* The Court's prior determinations are equally true today.

> D. **The New Injunction Meets the PLRA's Requirements.**

The requested injunction is narrowly drawn and extends no further than necessary to correct and prevent the harm to Plaintiff that would result from implementation of the

Executive Order. 18 U.S.C. § 3626(a)(2). It prohibits Defendants from applying only the challenged sections of the Executive Order and BOP's implementing memoranda, and it prohibits Defendants from doing so only as to Plaintiff. It is also the least intrusive means necessary to correct this harm. BOP has no discretion under the Executive Order to maintain Plaintiff's housing in a women's facility, nor to continue Plaintiff's necessary medical care. Thus, enjoining Defendants is the least intrusive action the Court could take that will ensure Plaintiff is not deprived of her rights. Finally, the issuance of a new preliminary injunction for ninety days will have no adverse impact on public safety or the operation of the criminal justice system because the order will simply maintain the status of Plaintiff's medical care and housing while the litigation proceeds.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court issue a new preliminary injunction for an additional ninety (90) days, from November 21, 2025, through February 19, 2026.

Respectfully submitted,

Dated: November 13, 2025    /s/ *Alexander Shalom*

Alexander Shalom
Natalie J. Kraner
LOWENSTEIN SANDLER LLP
One Lowenstein Drive
Roseland, NJ 07068
(973) 597-2500
ashalom@lowenstein.com
nkraner@lowenstein.com

Jennifer L. Levi
Sarah Austin (admitted *pro hac vice*)
GLBTQ Legal Advocates & Defenders
18 Tremont Street, Suite 950
Boston, MA 02108
(617) 426-1350
jlevi@glad.org
saustin@glad.org

Amy Whelan (*admitted pro hac vice*)
Christopher F. Stoll (*admitted pro hac vice*)
NATIONAL CENTER FOR LESBIAN RIGHTS
1401 21st St.
Ste #11548
Sacramento, CA 95811
(415) 365-1338
awhelan@nclrights.org
cstoll@nclrights.org

*Attorneys for Plaintiff*